# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 5, 2014

No. 12-30106

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

v.

NNANTA FELIX NGARI; ERNEST PAYNE; SOFJAN LAMID,

Defendants–Appellants.

Appeals from the United States District Court
for the Middle District of Louisiana
USDC No. 3:10-CR-60-1

Before HIGGINBOTHAM, OWEN, and HIGGINSON, Circuit Judges.

PER CURIAM:[*]

A jury found Nnanta Felix Ngari (Ngari), Sofjan Lamid (Lamid), Ernest Payne (Payne), and Henry Lamont Jones (Jones) guilty under 18 U.S.C. § 1349 of conspiring to commit health care fraud in violation of 18 U.S.C. § 1347, and guilty under 18 U.S.C. § 371 of conspiring to offer and receive kickbacks and bribes in violation of 42 U.S.C. §§ 1320a-7b(b)(1) and 1320a-7b(b)(2)(B), in connection with goods or services for which Medicare made payments. Jones

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-30106

voluntarily dismissed his appeal, but Ngari, Lamid, and Payne challenge their convictions on various grounds. Payne additionally challenges his sentence. We affirm.

**I**

Defendants' convictions arose out of their involvement with Unique Medical Solution, Inc. (Unique), a supplier of power wheelchairs and other durable medical equipment. The Government alleged that Ngari, the owner of Unique, hired Jones, Payne, and other "recruiters" to seek out Medicare beneficiaries to attend "health fairs." At the health fairs, physicians, including Lamid, wrote prescriptions for power wheelchairs that the Government contends, and the jury found, were medically unnecessary. Using these prescriptions, Ngari submitted claims to Medicare and then remitted to the recruiters a portion of the payments he received. The recruiters paid the physicians for prescribing the wheelchairs.

The jury heard testimony from Bonnie Walker-Simmons, a former recruiter for Unique. She described the scheme and the role of each of the defendants. She identified Lamid as one of the physicians who attended health fairs. She said that after performing cursory examinations lasting five to ten minutes, Lamid would write power wheelchair prescriptions for 100% of the individuals he saw, even though many were completely ambulatory. On one occasion, Walker-Simmons recalled, Lamid prescribed wheelchairs without seeing the patients. The number of times that Walker-Simmons witnessed Lamid's activities at health fairs is unclear, but it is undisputed that Lamid saw at least 463 patients at the fairs and did not prescribe wheelchairs for 77 of those patients. Lamid maintains that the percentage of patients for whom he

No. 12-30106

prescribed power chairs was not abnormally high and that in each instance, the power chair was medically necessary.

Walker-Simmons also identified Payne as a participant in the conspiracy, testifying that he brought Lamid to the health fairs, paid him and the recruiters, and took the prescriptions to Ngari at Unique. Ngari, according to Walker-Simmons, would then pay Payne as well as Jones for the prescriptions and other paperwork. On cross-examination, the defendants established that Walker-Simmons had previously lied to the grand jury, had been convicted of multiple felonies, and was cooperating with the Government in exchange for leniency.

During Walker-Simmons's direct examination, the district court admitted, over defendants' objections, portions of a recorded conversation from June 2005 among Walker-Simmons, Jones, and others (the Walker-Simmons conversation).[1] Ngari, Lamid, and Payne were not parties to the conversation. In the phone call, Jones discussed plans to start providing wheelchairs from companies that he formed, with the aim of no longer including Payne, Ngari, and Ngari's company Unique in the process of conducting health fairs at which physicians would prescribe unnecessary power chairs. Although none of the speakers identifies Ngari, Payne, or Lamid as potential participants in this scheme, they discuss the roles each defendant had played in the past in the Unique conspiracy.

---

[1] As Payne notes, there is substantial confusion regarding what portions of the recorded conversation were admitted into evidence. Based on the record on appeal, it appears that, while the Government initially planned to introduce the entire tape, it ultimately only introduced the portions of the tape that were played for the jury and that the transcript only includes these portions.

No. 12-30106

Cynthia Brown, Ngari's office assistant, also testified. She recounted that both Jones and Payne delivered prescriptions to Ngari and that Payne occasionally delivered wheelchairs to patients. To her knowledge these were the only services the two individuals provided to Ngari. Banking records showed, however, that Unique paid Jones $107,825 and Payne more than $60,000. The records regarding payments to Payne specify that some were for deliveries but do not indicate the purpose of the others. The payments for deliveries were generally for hundreds of dollars while those for which no purpose is given were in the thousands. With regard to Lamid's participation, Brown testified that she attended a health fair with Ngari, where Lamid examined patients who were ambulatory and able to climb up steps.

The Government also called wheelchair recipients as witnesses. Inez Stewart, who received a power wheelchair from Unique in 2004 based on Lamid's prescription, testified that she could walk and that she had never used any walking aids until 2010 when she began to use a cane. She worked as a cook for more than six years after receiving the power chair, until the day before trial, and stood while working. Stewart also stated that her home did not have the ramps necessary to use the wheelchair effectively and that the individual who delivered the chair did not show her how to use it. Weldon Bullock, who also received a power wheelchair from Unique based on Lamid's prescription, testified that he regularly gardens, hunts, and takes hour-long walks for exercise. The Government also called the primary care physicians for a number of the recipients of power wheelchairs. These physicians testified that they did not prescribe wheelchairs for these individuals because the patients never

4

No. 12-30106

needed them. The Government provided evidence showing that Ngari delivered about ninety of the wheelchairs.

During its case-in-chief, the Government introduced portions of testimony that Payne and Jones had given before the grand jury. In their statements, both individuals identified the other defendants as participants in the scheme and described their activities. Although the admitted portions of the testimony redacted the other defendants' names, it was apparent from the context of the testimony that Payne and Jones were referring to Ngari and to a physician. Neither Payne nor Jones testified at trial and, accordingly, were not subjected to cross-examination.

Ngari objected to the admission of both statements on Confrontation Clause grounds. Neither Lamid nor Payne raised an objection. The district court overruled Ngari's objection on the basis that the statements were those of coconspirators. After the testimony was introduced, the district court admonished the jury to consider the evidence only as to the declarants and not to speculate about to whom the various redacted names referred.

Lamid testified in his own defense and denied ever receiving kickbacks or prescribing medically unnecessary power wheelchairs. He further testified that he had denied the requests of approximately 200 individuals for power wheelchairs because they were not qualified to receive them.

After the close of the evidence, each of the defendants moved for judgment of acquittal under Federal Rule of Criminal Procedure 29. Ngari and Lamid subsequently filed renewed motions under Rule 29 and motions for new trials under Rule 33. The district court denied all the motions. This appeal followed.

No. 12-30106

## II

Ngari and Lamid contend that the district court's admission of Payne's grand jury testimony violated their rights under the Confrontation Clause of the Sixth Amendment. Payne joins them in asserting that the admission of Jones's grand jury testimony similarly violated the Sixth Amendment.

"Alleged Confrontation Clause violations are reviewed *de novo*, and are subject to harmless error analysis"[2] when objection to the evidence is made at trial. When a defendant fails to make an objection at the time of the evidence's admission, this court's review is limited to plain error.[3] Ngari lodged a contemporaneous objection to the admission of the grand jury testimony, and we therefore review de novo the district court's decision as to him. Payne and Lamid did not object to the testimony at the time of its admission, and our review as to them is limited to plain error.

The Sixth Amendment requires that a criminal defendant "be confronted with the witnesses against him."[4] The Supreme Court has long held that this clause prohibits the admission of a non-testifying codefendant's out-of-court testimony that names or incriminates the other defendants.[5] Although redacting references to the codefendants may prevent a violation,[6] this is insufficient when

---

[2] *United States v. Cantu-Ramirez*, 669 F.3d 619, 631 (5th Cir. 2012).

[3] *Puckett v. United States*, 556 U.S. 129, 135 (2009); *United States v. Cartwright*, 6 F.3d 294, 300 (5th Cir. 1993).

[4] U.S. CONST. amend. VI.

[5] *Bruton v. United States*, 391 U.S. 123, 135-36 (1968).

[6] *Richardson v. Marsh*, 481 U.S. 200, 211 (1987).

## No. 12-30106

the jury can infer from the statement that the redactions refer to codefendants.[7] As to Ngari, the district court clearly erred in admitting the grand jury testimony of Payne and Jones.

### A

Payne's and Jones's testimony name Ngari numerous times and describe his role in the scheme. Jones testified that Ngari would pay him for the prescriptions he delivered after verifying that the potential wheelchair recipients were Medicare beneficiaries. Although Ngari's name is blacked out and replaced with generic masculine pronouns, it is obvious that Payne and Jones are referring to him. Both state or imply that "he" is the owner of the medical supply company from which the chairs were obtained, and Ngari was the only person identified during the trial as owning such a company. More specifically, at one point in his grand jury testimony, Payne states that he took the prescriptions to "Unique." As the Government forthrightly concedes, the district court erred in admitting the grand jury testimony.[8] The Government should not have offered, and the district court should not have admitted, the grand jury testimony. The Supreme Court's precedent in this regard is clear. We disapprove of the Government's improper use of such testimony in the strongest of terms.

---

[7] *Gray v. Maryland*, 523 U.S. 185, 196-97 (1998); *see also United States v. Vejar-Urias*, 165 F.3d 337, 340 (5th Cir. 1999) ("Where . . . it is obvious from consideration of the confession as a whole that the redacted term was a reference to the defendant, then admission of a codefendant's confession that also inculpates the defendant does violate *Bruton*.").

[8] *See Vejar-Urias*, 165 F.3d at 340 (holding Confrontation Clause violation existed when it was clear from admitted confession that "someone" referred to codefendant and confession's statements regarding "someone" were "plainly incriminat[ing]").

No. 12-30106

The Government argues, nevertheless, that the error was harmless. Though the Government's conduct in offering the grand jury testimony was highly improper, admitting the evidence was not structural error and does not require automatic reversal. The erroneous admission of a non-testifying codefendant's out-of-court statement "may be considered harmless when, disregarding the codefendant's confession, there is otherwise ample evidence against a defendant."[9] The evidence is "ample" if we are "convinced beyond a reasonable doubt that the error was harmless in light of the other evidence presented at trial."[10] Similarly, the erroneous admission of evidence is generally harmless if the evidence is cumulative.[11] If, by contrast, "there was a reasonable probability that the defendants would be acquitted" in the absence of the error, we must reverse the conviction.[12]

The Government maintains that the admission of the grand jury testimony was harmless as to Ngari since it was merely "cumulative proof" of the "undisputed fact" that Ngari paid Jones and Payne for delivering the prescriptions. Ngari disputes this contention, asserting that, in the absence of the testimony, there was no "direct" evidence that he paid Jones and Payne for the prescriptions. The record does not support Ngari's position. There is substantial, uncontroverted evidence that Ngari paid both Jones and Payne for the prescriptions. This includes Brown's testimony that the only service Jones

---

[9] *Id.*

[10] *Id.*

[11] *See United States v. Hall*, 500 F.3d 439, 444 (5th Cir. 2007).

[12] *Vejar-Urias*, 165 F.3d at 340.

performed for Unique was the delivery of prescriptions and that Payne delivered prescriptions and made wheelchair deliveries. This information, coupled with the bank records showing that Ngari transferred to Payne and Jones tens of thousands of dollars, is compelling evidence that Ngari paid both individuals for the prescriptions they delivered. There is also direct evidence that Ngari paid Jones and Payne for prescriptions since Walker-Simmons specifically testified to that fact. While Ngari asserts that the jury could have found Walker-Simmons not credible, there was no reason for the jury to doubt the veracity of Brown's testimony or the bank records.

Ngari insists that the grand jury testimony was harmful because it was the primary evidence offered by the Government as to his knowledge that the prescriptions were for unnecessary medical equipment. Payne testified that Ngari told him it was not necessary to tell the recipients how to use the motorized wheelchairs. This statement is cogent evidence that Ngari knew that the recipients did not need wheelchairs. As the Government notes, "Ngari's defense was based on a claim of good faith—namely, that, if the power wheelchairs he was ordering were medically unnecessary, he was unaware of it."

Although Payne's statement was the most direct and compelling evidence of Ngari's state of mind, the Government introduced other circumstantial evidence that establishes beyond a reasonable doubt that Ngari knew the wheelchairs were unnecessary. The Government introduced evidence that Ngari personally delivered ninety wheelchairs and that many recipients were ambulatory and did not have wheelchair ramps or other equipment needed to use the chairs in their homes. One recipient to whom Ngari delivered a wheelchair had four or five steps leading into her home and was able to walk up

No. 12-30106

those steps without assistance. Recipients also testified that the person who delivered their wheelchairs did not instruct them on how to use the devices. Brown stated that she and Ngari attended a health fair where ambulatory individuals without wheelchairs were waiting to see Lamid. This evidence is sufficiently compelling to establish beyond a reasonable doubt that Ngari knew the wheelchairs he was ordering were not necessary. There was no reasonable probability a jury would have acquitted Ngari if the grand jury testimony had been excluded.

**B**

Because Lamid failed to object to the excerpts of grand jury testimony, he must demonstrate that the admission of the transcripts was plain error. To meet this high bar, Lamid "must show that (1) there is error; (2) the error was clear and obvious, not subject to reasonable dispute; and (3) the error affected his substantial rights."[13] Even if he demonstrates the existence of these three elements, this court only has discretion to remedy the district court's error "if it seriously affects the fairness, integrity, or public reputation of judicial proceedings."[14] The Government concedes that the district court committed error and does not dispute that it was clear or obvious. It is therefore unnecessary to reach those questions. Even assuming that these two prongs were met, Lamid has failed to establish that the district court's admission of the grand jury excerpts affected his substantial rights.

---

[13] *United States v. Hebron*, 684 F.3d 554, 558 (5th Cir. 2012).

[14] *Id.*

No. 12-30106

To show that an error affected his substantial rights, an appellant "must demonstrate that it 'affected the outcome of the district court proceedings.'"[15] Lamid argues that the admission of the testimony altered the outcome because it allowed the Government to "create credibility where none existed" and "to construe in the minds of the jury that the actors at trial were, in fact, involved in a conspiracy." The Government responds that Lamid suffered no prejudice because there was sufficient untainted evidence to convince a jury beyond a reasonable doubt that Lamid knowingly prescribed unnecessary wheelchairs.

The record does not support Lamid's assertions that Payne's and Jones's testimony created credibility where none existed or established the existence of a previously questionable conspiracy. Although Walker-Simmons's prior false statements and convictions might have initially led the jury to question her honesty, the Government put forward substantial confirmatory evidence—including Brown's testimony that Lamid's patients were ambulatory, the testimony of the patients themselves as well as their treating physicians, and the banking records that reflected payments to Payne and Jones—to establish that Walker-Simmons was credible. This evidence was also more than sufficient to establish that there was a conspiracy to submit claims for unnecessary wheelchairs of which Lamid was an integral part.

It is also doubtful that the testimony as redacted actually incriminated Lamid. While Payne and Jones made clear references to a physician, they are not obvious references to Lamid. The Government introduced evidence that the conspirators also relied heavily upon Dr. Reginald Goldsby to prescribe

---

[15] *Puckett v. United States*, 556 U.S. 129, 135 (2009) (quoting *United States v. Olano*, 507 U.S. 725, 734 (1993)).

No. 12-30106

unnecessary wheelchairs. Aside from a single mention of New Orleans as one physician's place of business, there is nothing in either set of excerpts that would have allowed the jury to conclude that Jones and Payne were speaking about Lamid instead of Goldsby. Even Lamid's own counsel believed that some of the references to his client were actually references to Goldsby. Lamid has failed to demonstrate that any error the district court made in admitting the testimony affected his substantial rights.

Lamid also argues that the statements should not have been admitted because they were hearsay. Because Lamid failed to object at trial, this claim is subject to the same plain error analysis[16] as his Confrontation Clause objection and fails for the same reasons.

## C

Like Lamid, Payne failed to object to the admission of Jones's testimony and must therefore demonstrate that its admission affected his substantial rights. Payne argues that the jury's consideration of Jones's testimony affected the outcome of his case by indicating that Payne had the requisite mens rea. However, as the Government points out, the only segment of the admitted grand jury testimony that references Jones is a twelve-line passage in which Jones states that he worked with "him" and paid "him" a portion of the funds he received from Ngari. This statement sheds no light on Payne's mens rea, and it is also cumulative since Payne admitted that he was paid per chair delivered. Moreover, there is nothing in this passage or any other segment of Jones's admitted testimony that indicates that "him" is a reference to Payne. Since

---

[16] *See Foradori v. Harris*, 523 F.3d 477, 508 (5th Cir. 2008) ("Because [the defendant] did not timely object to the testimony it now challenges, we review these claims for plain error . . . ."); *id.* at 507 n.26 (objection not made until day after testimony introduced not timely).

12

No. 12-30106

Jones's testimony was cumulative, its admission did not affect Payne's substantial rights.

We therefore conclude that the district court did not commit reversible error in admitting the grand jury testimony of Payne and Jones.

### III

Ngari, Lamid, and Payne also seek reversal of their convictions based on the district court's admission of the Walker-Simmons recorded and transcribed telephone conversation. They assert that it is not a statement of a coconspirator under Federal Rule of Evidence 801(d)(2)(E) and that, even if it were, its admission violated Federal Rule of Evidence 404(b). Lamid and Payne additionally claim that the admission of the conversation violated the Confrontation Clause.

The Government argues that, even if erroneous, the introduction of the Walker-Simmons conversation was harmless because it did not address whether the prescriptions were medically necessary. The defendants respond that the conversation "imputed . . . 'guilty knowledge'" to them and indicated that the payments to Lamid were kickbacks rather than compensation for travel. We agree with the defendants that the conversation is incriminating because it strongly suggests that the defendants were attempting to conceal their fraud and that Lamid was receiving kickbacks. Jones specifically states at one point that Ngari did not pay Lamid directly because doing so would be considered kickbacks and would make both liable for fraud.

Nonetheless, even assuming *arguendo* that the admission of the conversation was error, it was harmless since the statements concerning the

13

No. 12-30106

defendants were cumulative of evidence already in the record.[17] As discussed, the Government introduced considerable other evidence that the defendants intended to commit fraud and to pay and receive kickbacks. Such evidence included Walker-Simmons's testimony that Payne paid Lamid kickbacks, that Ngari paid Payne for prescriptions, and that Lamid at times wrote prescriptions without seeing patients; the testimony of the wheelchair recipients and their treating physicians that they were completely ambulatory and did not need any walking aids; the bank records establishing that Ngari paid Payne and Jones tens of thousands of dollars; and the evidence that Ngari personally delivered wheelchairs to many individuals, many of whom had no difficulty walking and whose homes were not accessible to a wheelchair. There is no reasonable probability a jury would have acquitted the defendants in the absence of the recorded conversation. Thus, the admission of the conversation was not reversible error.

## IV

Ngari, Lamid, and Payne contend that their convictions under 18 U.S.C. § 371 and 18 U.S.C. § 1349 were multiplicitous. However, since they each failed to raise this claim before trial and none has shown cause for that failure, they each have forfeited the claim on appeal.[18]

Unlike an argument regarding multiplicitous convictions, a claim that sentences are multiplicitous "can be raised for the first time on appeal," in which case we review for plain error.[19] Neither Lamid nor Ngari contends that the

---

[17] *See United States v. Hall*, 500 F.3d 439, 444 (5th Cir. 2007).

[18] *See United States v. Soape*, 169 F.3d 257, 265 (5th Cir. 1999).

[19] *United States v. Dixon*, 273 F.3d 636, 642 (5th Cir. 2001).

14

No. 12-30106

district court imposed multiplicitous sentences or asks that this court remand for resentencing. While Payne's primary argument concerns his convictions, he also asks this court to remand for resentencing because "it is not possible . . . to determine with the requisite certainty that the sentences did not violate the Double Jeopardy Clause." Therefore, we review the district court's imposition of sentences upon Payne under both 18 U.S.C. § 371 and 18 U.S.C. § 1349 for plain error.

The district court sentenced Payne to two concurrent terms of fifty-five months in prison, ordered him to pay restitution, and assessed a $100 special assessment for each count. Although the only effect of resentencing would therefore be to remove one of the $100 special assessments, we have previously held that imposition of multiplicitous special assessments affects a defendant's substantial rights and the "fairness, integrity, or public reputation of [the] judicial proceedings."[20] If the district court erred in imposing multiple sentences and if that error was clear or obvious, we must reverse and remand for resentencing.[21]

To determine whether the imposition of multiple sentences violates the Double Jeopardy Clause of the Fifth Amendment, we employ the test articulated in *Blockburger v. United States*.[22] Under that test, a single act or transaction that violates two provisions amounts to two offenses and a defendant may be

---

[20] *United States v. Ogba*, 526 F.3d 214, 237-38 (5th Cir. 2008) (alteration in original). The concurrent sentence doctrine also does not apply because of the imposition of the special assessment. *See Ray v. United States*, 481 U.S. 736, 737 (1987).

[21] *United States v. Hebron*, 684 F.3d 554, 558 (5th Cir. 2012).

[22] 284 U.S. 299 (1932).

punished under each so long as "each provision requires proof of a fact which the other does not."[23]  The Government argues that 18 U.S.C. § 371 and 18 U.S.C. § 1349 are two separate offenses under *Blockburger* since § 371 requires proof of an overt act, which § 1349 does not, and § 1349 requires proof that the conspirators agreed to violate a statute in Chapter 63 of Title 18, which § 371 does not.

Payne does not dispute the Government's contentions but instead points to our decision in *United States v. Ogba*.[24]  In that case, we held that the imposition of sentences under both 42 U.S.C. § 1320-7b(b)(2)(A) (illegal remunerations) and 18 U.S.C. § 1347 (healthcare fraud) was multiplicitous.[25] We recognized that the two statutes each facially "require proof of an additional fact that the other does not":  a violation of § 1347 requires proof of fraud, which illegal remuneration does not, while a violation of § 1320-7b(b)(2)(A) requires proof of payment in return for a referral, which healthcare fraud does not.[26] Nonetheless, we held, the analysis did "not stop here."[27]  In addition to examining the statutes facially, we held that we must assess the "necessary elements to be proved under the statutes *as charged*."[28]  Applying this analysis, we held that, as charged, the jury could have found the defendant guilty of

---

[23] *Blockburger*, 284 U.S. at 304.

[24] 526 F.3d 214 (5th Cir. 2008).

[25] *Ogba*, 526 F.3d at 234-36.

[26] *Id.* at 234.

[27] *Id.*

[28] *Id.* (emphasis added).

16

healthcare fraud based solely on proof of his dishonest receipt of illegal kickbacks and intent to defraud.[29] Since the only difference between this finding and that necessary to convict the defendant of illegal remuneration was the intent to defraud, illegal remuneration was a lesser included offense and sentencing the defendant under both statutes violated the Fifth Amendment.[30]

Payne argues that this case presents "virtually identical facts" as *Ogba* and therefore requires the same result. This is not the case. Unlike *Ogba*, the jury in this case could not have found a violation of 18 U.S.C. § 1349 simply by finding that Payne violated 18 U.S.C. § 371, or vice versa. The district court instructed the jury that, in order to prove the defendants violated § 1349, the Government was required to demonstrate that the defendants conspired "to obtain prescriptions for medically unnecessary power wheelchairs and then use those medically unnecessary prescriptions as a basis to submit false and fraudulent claims to Medicare." The jury was instructed that to prove a violation of § 371, the Government was required to show that the defendants "conspir[ed] . . . to pay illegal healthcare kickbacks to obtain prescriptions for medically unnecessary power wheelchairs or to receive illegal healthcare kickbacks to provide" such prescriptions. In order to find a violation of § 1349, the jury had to find that the defendants conspired to submit claims for medically unnecessary wheelchairs to Medicare. The jury was not required to make such a finding to convict the defendants under § 371. Similarly, to find a violation of § 371, the jury had to find that the defendants conspired to pay or receive kickbacks. Such a finding was not required to convict under § 1349. Because,

---

[29] *Id.* at 235-36.

[30] *Id.*

No. 12-30106

as charged, each offense required proof of a fact the other did not, the district court did not err, plainly or otherwise, in sentencing Payne under both statutes.

## V

Ngari, Lamid, and Payne assert that the Government's evidence was insufficient to support their convictions. As the defendants properly moved for acquittal, our review is de novo.[31] We will overturn a conviction based on insufficiency of the evidence only if no "rational jury, viewing the evidence in the light most favorable to the prosecution, could have found the essential elements of the offense to be satisfied beyond a reasonable doubt."[32]

The defendants argue that the evidence against them was insufficient because it did not establish that they knowingly agreed to submit fraudulent claims or pay or receive kickbacks in exchange for prescribing medically unnecessary wheelchairs. These arguments are meritless. There was substantial evidence from which a rational jury could conclude beyond a reasonable doubt that the defendants knowingly agreed to submit medically unnecessary claims to Medicare and to pay and receive kickbacks. Such evidence included Walker-Simmons's testimony that Payne paid Lamid and Ngari paid Payne, the testimony of recipients of power wheelchairs and their treating physicians that they did not need wheelchairs, the records showing that Ngari and Payne personally delivered wheelchairs to individuals who were ambulatory and unimpaired, and Payne's own admissions that a representative from Medicare alerted him that he may have been involved in illegal activity.

---

[31] *United States v. Valle*, 538 F.3d 341, 344 (5th Cir. 2008).

[32] *United States v. Jones*, 664 F.3d 966, 976 (5th Cir. 2011).

18

No. 12-30106

In light of this evidence as well as the other evidence discussed, the evidence was sufficient to support the convictions.

**VI**

Ngari, Lamid, and Payne argue that the Government failed to prosecute within the statute of limitations. They additionally assert that any evidence concerning Lamid of occurrences more than five years before the date of the indictment was inadmissible under Federal Rule of Evidence 404(b).

We review "the district court's fact findings in relation to the statute of limitations for clear error and its legal conclusions *de novo*."[33] The district court's determination of the admissibility of evidence is reviewed for abuse of discretion.[34]

The applicable statute of limitations is five years.[35] Since the indictment was returned on April 28, 2010, the Government needed to prove that a "conspirator committed an overt act in furtherance of the conspiracy" on or after April 28, 2005.[36] The defendants argue that the Government failed to meet this burden because on February 17, 2005, Lamid wrote the last wheelchair prescriptions that Unique filled, and Goldsby wrote the last prescription in April 2005 that was used by Unique to obtain Medicare payments.

This argument is meritless. The statute of limitations does not require the Government to prove that *each* conspirator engaged in an overt act in

---

[33] *United States v. Pfluger*, 685 F.3d 481, 483 (5th Cir. 2012).

[34] *United States v. Ramirez*, 145 F.3d 345, 355 (5th Cir. 1998).

[35] *See* 18 U.S.C. § 3282(a).

[36] *United States v. Manges*, 110 F.3d 1162, 1169 (5th Cir. 1997).

furtherance of the conspiracy within five years before the return of the indictment. Rather, the Government need only "allege and prove the commission of at least *one* overt act by *one* of the conspirators."[37] If a defendant withdraws from a conspiracy, the statute of limitations begins to run when the withdrawal occurs.[38] The defendants, however, present no evidence that Lamid withdrew from the conspiracy.

The record reveals that numerous overt acts were committed after April 28, 2005, including payments from Ngari to Payne, deliveries of unnecessary wheelchairs prescribed by Lamid, and the receipt of funds from Medicare. The defendants do not dispute that these were overt acts in furtherance of the conspiracy.[39]

The record supports the conclusion that Lamid personally engaged in overt acts in furtherance of the conspiracy during the limitations period. Specifically, evidence showed that Lamid saw patients for whom he wrote wheelchair prescriptions filled by Unique as late as December 7, 2005.

Even in the absence of such evidence, evidence concerning Lamid would be admissible. "The statute of limitations is a defense to prosecution, not a rule of evidence."[40] As long as the "prosecution is timely instituted, the statute of

---

[37] *United States v. Davis*, 533 F.2d 921, 926 (5th Cir. 1976) (emphasis added).

[38] *United States v. Heard*, 709 F.3d 413, 427 (5th Cir. 2013).

[39] Any such contention would be meritless, as this court has previously held that acceptance and retention of fraud proceeds is an overt act in furtherance of a conspiracy. *See, e.g., United States v. Loe*, 248 F.3d 449, 456-57 (5th Cir. 2001).

[40] *United States v. Ashdown*, 509 F.2d 793, 798 (5th Cir. 1975).

limitations has no bearing on the admissibility of evidence."[41] The district court did not err in determining that the prosecution was timely, and the statute of limitations did not bar the admission of any evidence concerning Lamid.

## VII

When Lamid was sentenced, the district court ordered him to forfeit more than $2.5 million and denied his motion to stay the forfeiture pending appeal. Lamid contends that the district court's denial of his motion to stay was error.

Federal Rule of Criminal Procedure 32.2(d) provides that a district court "may stay the order of forfeiture . . . to ensure that the property remains available pending appellate review."[42] The parties agree that the decision to grant a stay is within the district court's discretion.

Although Rule 32.2(d) does not specify the considerations that a district court must assess in determining whether to grant a stay of a forfeiture, courts have generally examined the following factors: (1) the likelihood of success on appeal; (2) whether the forfeited assets will depreciate over time; (3) the forfeited assets' intrinsic value to the defendant; and (4) the expense of maintaining the forfeited property.[43] The district court adopted this test in denying Lamid's motion. The district court did not abuse its discretion in denying a stay.

\*        \*        \*

---

[41] *Id.*

[42] FED. R. CRIM. P. 32.2(d).

[43] *See, e.g.*, *United States v. Droganes*, 893 F. Supp. 2d 855, 894 (E.D. Ky. 2012); *United States v. Peters*, 784 F. Supp. 2d 234, 235 (W.D.N.Y. 2011); *United States v. Riedl*, 214 F. Supp. 2d 1079, 1082 (D. Haw. 2001).

No. 12-30106

For the foregoing reasons, the judgment of the district court is AFFIRMED.