# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-20490

United States Court of Appeals
Fifth Circuit

**FILED**

August 11, 2016

Lyle W. Cayce
Clerk

WREN THOMAS,

Plaintiff - Appellant

v.

CHEVRON U.S.A., INCORPORATED,

Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Texas

Before HIGGINBOTHAM, DENNIS, and CLEMENT, Circuit Judges.

JAMES L. DENNIS, Circuit Judge:

In October 2014, Wren Thomas sued Chevron USA, Inc. (Chevron) and Edison Chouest Offshore, LLC (Edison)[1] in Texas state court. Chevron removed the suit to federal court and filed a motion to dismiss under Rule 12(b)(6). Thomas filed a response to Chevron's motion to dismiss in which he argued that the court should remand the case, deny Chevron's motion to dismiss, or, in the alternative, grant him leave to amend his complaint. After

---

[1] In its motion to dismiss for lack of personal jurisdiction, this defendant stated that it was called Edison Chouest Offshore until June 2006, when it changed its name to Offshore Service Vessels (OSV). It also stated that Edison is no longer a business entity, but that the group of companies OSV is part of sometimes uses "Edison Chouest Offshore" as a trade name.

No. 15-20490

the district court converted the motion to dismiss into a motion for summary judgment and allowed the parties to file supplemental briefing, Thomas filed a supplemental brief again requesting, *inter alia*, leave to amend his complaint.    In July 2015, the district court issued an opinion granting Chevron's motion for summary judgment and denying Thomas's motion for leave to amend.   The court concluded, "Thomas's motion to amend pleadings is denied because the proposed amendment would be futile."    Thomas timely appealed.    Because the notice Thomas gave of his intent to amend his complaint was sufficient under our circuit's precedent, and because his amended claims would not have been futile, we VACATE the district court's judgment, REVERSE the court's ruling on Thomas's motion for leave to amend, and REMAND for further proceedings.

I

Thomas was the captain of the *C-Retriever*, a supply vessel supporting Chevron's platform operations in the Agbami Field off the Nigerian coast.   In his original petition, Thomas alleged that he told Chevron and Edison, his primary employer, that he feared pirate attacks and worried that the *C-Retriever*'s age, its lack of speed, and the fact that it used easily-accessed VHF radios[2] to communicate its location made the vessel particularly vulnerable. In the spring of 2013 he began receiving threats on the *C-Retriever*'s VHF radio, which he reported to a Chevron area manager and to his Edison supervisors.    He asked to be transferred, but Edison did not "effect[] his transfer."

In October 2013, a militant group in Bayelsa, Nigeria, threatened to kidnap Edison crews and burn their vessels if its demands were not met.

---

[2] VHF radios operate in the very high frequency range, transmitting short-range communications on standard, open, international frequencies known as channels.

2

Edison sent a warning to its vessels in the region, including the *C-Retriever*, and encouraged the crews to "stay very vigilant." Four days later, Edison assigned Thomas to make a supply run through what Thomas described as "one of the most pirate-infested areas in West Africa, and directly closer to the source of the recent threats." He objected, but ultimately complied. The *C-Retriever* began the trip on October 22, 2013. In accordance with "usual practice," Edison and Chevron broadcast the vessel's position through VHF radios.

Pirates attacked the *C-Retriever* around 3:00 am on October 23, 2013. Because the vessel did not have a citadel—a fortified safe room designed to protect crewmembers in the event of a pirate boarding—Thomas and his crew hid in the bulk tank room. The pirates breached the room after six hours and began shooting. Thomas and his engineer surrendered to avoid the loss of life. The pirates held Thomas for 18 days at various "holding camps," where, Thomas states, he was tortured and poorly fed. When he was released, he was malnourished and suffered from posttraumatic stress disorder, sleep disorders, and other medical problems.

Thomas sued Chevron and Edison in Texas state court in October 2014, asserting claims under the Jones Act and for unseaworthiness and maintenance and cure against both defendants. Chevron removed the suit to federal court on November 16, and on November 24 it filed a motion to dismiss under Rule 12(b)(6) on the grounds that Chevron was not Thomas's employer and was not the owner of the vessel on which he was injured.[3] Edison, a

---

[3] To state a claim under the Jones Act, a plaintiff must establish that the defendant was his employer. 46 U.S.C. § 30104; *see also Guidry v. S. L Contractors, Inc.*, 614 F.2d 447, 452 (5th Cir. 1980) ("A Jones Act claim also requires proof of an employment relationship either with the owner of the vessel or with some other employer who assigns the worker to a task creating a vessel connection."). Furthermore, "[t]he law is clear that only the Jones Act

No. 15-20490

Louisiana corporation, moved to dismiss for lack of personal jurisdiction. At a hearing on January 23, 2015, the district court allowed the parties to conduct jurisdictional discovery regarding Edison's citizenship, personal jurisdiction over Edison, and Thomas's employment status. On February 5, Thomas filed a response to Chevron's motion to dismiss in which he argued that the court should remand the case, deny Chevron's motion to dismiss, or, in the alternative, grant him leave to amend his complaint "to clarify his general maritime claims and state law claims against Chevron as distinct from employment-related claims against [Edison]." Elsewhere in his response, Thomas specifically noted that his petition "alleges a number of duties and obligations which could be asserted under general maritime law and/or common law against a non-employer, including risk management, providing anti-terrorist security, failure to warn of known risks, and negligence in setting routes and in broadcasting routes in light of the known piracy risks."

On July 6, 2015, the district court converted the motion to dismiss into a motion for summary judgment and allowed the parties to file supplemental briefing. Thomas filed a supplemental brief again requesting, *inter alia*, leave to amend. Specifically, he sought to replace his Jones Act claims with "general maritime law and negligence claims" and argued that "liability theories not dependent on Chevron's status as an employer should survive summary judgment, and those arguments and evidence are incorporated for all purposes herein." Less than a week later, on July 29, the district court issued an opinion granting Chevron's motion for summary judgment and denying Thomas's motion for leave to amend. With respect to Thomas's motion, the court reasoned that "even as amended to remove the Jones Act claims, Thomas's

---

employer/shipowner owes an injured seaman maintenance and cure benefits." *Armstrong v. Trico Marine, Inc.*, 923 F.2d 55, 58 n.2 (5th Cir. 1991).

4

No. 15-20490

claims against Chevron fail as a matter of law.  Thomas has not asserted any basis for finding Chevron liable under general maritime law."  The court concluded:  "Thomas's motion to amend pleadings is denied because the proposed amendment would be futile."  Thomas timely appealed.

## II

In general, we review the denial of a motion to amend for abuse of discretion.  *Fahim v. Marriott Hotel Servs., Inc.*, 551 F.3d 344, 347 (5th Cir. 2008).  "A district court abuses its discretion if it: (1) relies on clearly erroneous factual findings; (2) relies on erroneous conclusions of law; or (3) misapplies the law to the facts."  *Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 767 (5th Cir. 2016) (quoting *Priester v. JP Morgan Chase Bank, N.A.*, 708 F.3d 667, 672 (5th Cir. 2013)).  However, where the district court's denial of leave to amend was based solely on futility, this court applies a de novo standard of review "identical, in practice, to the standard used for reviewing a dismissal under Rule 12(b)(6)."  *City of Clinton v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152 (5th Cir. 2010).  Under that standard, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible if the complaint "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

## III

Rule 15 governs motions to amend made before trial and provides that "[t]he court should freely give leave when justice so requires."  FED. R. CIV. P. 15(a)(2).  This court has observed that "Rule 15(a) 'evinces a bias in favor of granting leave to amend.'"  *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 566 (5th Cir. 2002) (quoting *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981)).  A movant is required to give the court some

notice of the nature of his or her proposed amendments. "[I]n order to take advantage of the liberal amendment rules as outlined in the Federal Rules of Civil Procedure, the party requesting amendment, even absent a formal motion, need only 'set forth with particularity the grounds for the amendment and the relief sought.'" *United States ex rel. Doe v. Dow Chem. Co.*, 343 F.3d 325, 330–31 (5th Cir. 2003) (quoting *United States ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 386–87 (5th Cir. 2003)).

Although we have not provided strict guidelines as to what constitutes a sufficient request for leave to amend, it is clear that *some* specificity is required. *See, e.g., Doe*, 343 F.3d at 331 (explaining that a "one-page, three-sentence motion" that "offer[ed] no grounds on which an amendment should be permitted" was an insufficient request for leave to amend); *Goldstein v. MCI WorldCom*, 340 F.3d 238, 254–55 (5th Cir. 2003) (affirming denial of motion for leave to amend where the request stated simply: "Should this Court find that the Complaint is insufficient in any way, however, plaintiffs respectfully request leave to amend."); *Willard*, 336 F.3d at 387–88 (determining that a bald statement that a "court should not dismiss a plaintiff's complaint under Rule 9(b) unless the plaintiff has already been given the opportunity to amend" is an insufficient request of leave to amend); *McKinney v. Irving Indep. Sch. Dist.*, 309 F.3d 308, 315 (5th Cir. 2002) (finding no abuse of discretion in the district court's denial of leave to amend where the plaintiffs failed to file an amended complaint as a matter of right or submit a proposed amended complaint in a request for leave of the court and failed to alert the court as to the substance of any proposed amendment).

Proper notice having been given, permissible reasons for denying a motion for leave to amend include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of

No. 15-20490

allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962). In *Jamieson By & Through Jamieson v. Shaw*, 772 F.2d 1205, 1208 (5th Cir. 1985), we explained that "[w]hen futility is advanced as the reason for denying an amendment to a complaint, the court is usually denying leave because the theory presented in the amendment lacks legal foundation or because the theory has been adequately presented in a prior version of the complaint."

The district court denied Thomas's request for leave to amend on the grounds that amendment would be futile. The court explained:

> In his supplemental memorandum submitted after the court converted Chevron's motion to dismiss into one for summary judgment, Thomas objected to the court's apparent decision to rule on Chevron's motion to dismiss and again asked, "subject to and without waiving his motion for remand," that the court permit him to amend his pleadings to "[r]emove Jones Act claims against Chevron and replace those with general maritime law and negligence claims," and to "[r]emove reference to Chevron as Thomas's employer." Thomas stated that his intent in seeking leave to amend was to "conform his pleadings to Chevron and [Edison's] respective positions on employer status" and "allow Thomas to move forward with substantive discovery at trial." But even as amended to remove the Jones Act claims, Thomas's claims against Chevron fail as a matter of law. Thomas has not asserted any basis for finding Chevron liable under general maritime law. The undisputed evidence shows that [Edison] owned the vessel and employed Thomas.

Thomas asserts that the district court misinterpreted or ignored his request to add maritime negligence claims to his complaint, claims which would not depend on an employment or contractual relationship between Thomas and Chevron. Chevron apparently agrees, arguing not that these claims would be futile but rather that they were not stated with sufficient specificity.

Under this court's precedent, Thomas was required only to "set forth with particularity the grounds for the amendment and the relief sought." *Doe*,

7

343 F.3d at 331.  Although his motion was not particularly well organized, a review of the pleadings convinces us that Thomas complied with this requirement.  He gave notice of the substance of his proposed amendments: he wished to reclassify the claims at ¶ 30 of his complaint as maritime and common law negligence claims.  He provided a plausible basis for liability, noting that Chevron owed duties and obligations under maritime and general common law regardless of his employment status.  Furthermore, because he requested leave to replace his Jones Act claims with maritime law and negligence claims, the relief he sought was presumably the same as that outlined in his original petition: compensatory damages, punitive damages, interest, reimbursement of costs, and any other general and equitable relief deemed appropriate by the trial court.

Finally, Thomas's proposed amendments would not have been futile.  Applying the 12(b)(6) standard, a complaint is futile if it lacks "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678.  Reading his requests as an attempt to reclassify the claims at ¶ 30 of his complaint as maritime and common law negligence claims, Thomas alleged, *inter alia*, that Chevron:  failed to heed official warnings regarding the presence of pirates in waters where the *C-Retriever* sailed; intentionally led the *C-Retriever* into waters where pirates were present and knowingly placed Plaintiffs in harm's way; intentionally broadcast the *C-Retriever*'s route information through VHF airwaves, despite open access to the airwaves; failed to provide adequate security personnel and or security vessel escorts; failed to properly address the specific threats to Thomas's person; and failed to provide appropriate levels of security to protect Thomas.  These claims are broadly supported by Thomas's factual allegations.

Further, they are claims upon which relief can be granted.  *See* FED. R. CIV. P. 12(b)(b)(6).  As we explained in *Withhart v. Otto Candies, L.L.C.*, 431

F.3d 840, 842 (5th Cir. 2005), "negligence is an actionable wrong under general maritime law," and the elements of that tort are "essentially the same as land-based negligence under the common law." To state a claim for relief under maritime law, the "plaintiff must 'demonstrate that there was a duty owed by the defendant to the plaintiff, breach of that duty, injury sustained by [the] plaintiff, and a causal connection between the defendant's conduct and the plaintiff's injury.'" *Canal Barge Co. v. Torco Oil Co.*, 220 F.3d 370, 376 (5th Cir. 2000) (quoting *In re Cooper/T. Smith*, 929 F.2d 1073, 1077 (5th Cir. 1991)) (alteration in original). "Under maritime law, a plaintiff is owed a duty of ordinary care under the circumstances." *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 211 (5th Cir. 2010). Significantly, this duty does extend to third parties. *See, e.g.*, *Coats v. Penrod Drilling Corp.*, 61 F.3d 1113, n.27 (5th Cir. 1995 ("The special solicitude for seaman . . . applies under the general maritime law when the Jones Act is inapplicable, such as when a seaman is injured through the fault of a third party.").

The determination of the existence and scope of a duty "involves a number of factors, including most notably the foreseeability of the harm suffered by the complaining party." *Consol. Aluminum Corp. v. C.F. Bean Corp.*, 833 F.2d 65, 67 (5th Cir. 1987). Thomas alleged that Chevron knew about of the real risk of piracy in the region and of the specific threats received by the *C-Retriever*. He alleged that despite its knowledge, Chevron requested that the *C-Retriever* take an unaccompanied support trip that would pass by the source of the recent threats. Finally, he alleged that Chevron broadcast his route information and locations over easily-accessible VHF radios, through which they could be heard by pirates known to be in the area. These allegations are sufficient to suggest that the harm suffered by Thomas was reasonably foreseeable to Chevron and that Chevron consequently owed him a duty not to subject him to the conditions he encountered on his October 22,

2013 voyage. *See id*. The allegations are thus "enough to raise a right to relief above the speculative level" and Thomas's claim for relief is plausible on its face, *Twombly*, 550 U.S. at 555; consequently, his amendment would not have been futile, *City of Clinton*, 632 F.3d at 152.

## IV

The precise content of Thomas's request for leave to amend was not immediately apparent. However, a review of the pleadings demonstrates that Thomas did in fact give notice of his intent to amend his complaint to include negligence claims under general maritime law. Because these amendments would not have been futile, the district court erred in denying his motion. We therefore VACATE the district court's judgment with respect to claims against Chevron, REVERSE the court's ruling on Thomas's motion for leave to amend, and REMAND for further proceedings.