# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 15-30572

United States Court of Appeals
Fifth Circuit

**FILED**

October 11, 2016

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

SOFJAN LAMID,

Defendant

RUDY LAMID,

Appellant

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:10-CR-60-2

Before SOUTHWICK and COSTA, Circuit Judges, and OZERDEN\*, District Judge.

PER CURIAM:\*

---

\* District Judge of the Southern District of Mississippi, sitting by designation.

\*\* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-30572

Rudy Lamid appeals the dismissal of a third-party forfeiture claim. The district court dismissed the claim after finding that Rudy lacked authority to file it. We affirm.

## I.

A jury convicted Dr. Sofjan Lamid, Rudy's father, of conspiring to commit health care fraud offenses. Dr. Lamid was sentenced to probation and ordered to forfeit all property that constituted or was derived from gross proceeds traceable to his crimes. The district court also ordered a forfeiture money judgment against Dr. Lamid in the amount of $2,525,132. In January 2012, the district court entered judgment against Dr. Lamid, which included the $2,525,132 money judgment.

The next month, the government moved, pursuant to Federal Rule of Criminal Procedure 32.2(e) and 21 U.S.C. section 853(p), to have Dr. Lamid's interest in various vehicles, real properties, and bank accounts surrendered as substitute assets to partially satisfy the forfeiture money judgment. The district court granted the motion and ordered the forfeiture of, among other things, all of Dr. Lamid's right, title, and interest in four real properties: (1) 7243 Brookwood Drive, Mandeville, Louisiana; (2) 3837 Sue Ker Drive, Harvey, Louisiana; (3) 1107 South Peters Street, # 112, New Orleans, Louisiana; and (4) 1107 South Peters Street, # 408, New Orleans, Louisiana.

On April 5, 2012, the government, as required by 21 U.S.C. section 853(n)(1), published notice of all the forfeited properties on its official internet website, www.forfeiture.gov. The notice ran for thirty days and advised potential claimants of the requirements for filing a claim asserting an interest in any of the properties. The government also sent direct notice of the forfeiture order by certified mail to the mortgage holders of the immovable property and to Dr. Lamid's wife, Burlini Lamid. Mailed on April 4, 2012, the

2

notice was sent to the address listed in the Presentence Investigation Report as Dr. and Mrs. Lamid's residence.

After the notice was mailed, on May 4, Rudy filed a verified notice of claim on behalf of his mother, Burlini Lamid. The claim stated that Mrs. Lamid appeared "by Power of Attorney assigned to Mr. Rudy S. Lamid." Mrs. Lamid sought a declaration of her continued ownership interest in the properties and, in the event that the properties were sold, an award of the full amount due to her from the sale. In the verification affidavit filed in support of Mrs. Lamid's petition, Rudy stated that he maintained "power of attorney from Mrs. Burlini T. Lamid, his mother." But the power of attorney Rudy submitted was executed by Dr. Lamid—not Mrs. Lamid—and authorized Rudy to be Dr. Lamid's agent in handling all of his personal and business matters. It included only one sentence pertaining to Mrs. Lamid: "This power of Attorney shall include all decisions, medical/financial to be made regarding BURLINI LAMID, WIFE OF APPEARER AND DICKY S. LAMID, SON OF APPEARER."

On May 27, the government entered into a partial settlement with Mrs. Lamid. It agreed to pay Mrs. Lamid half the proceeds from the sale of the two Lexus vehicles included in the order of forfeiture as substitute assets, and Mrs. Lamid agreed to assign her interest in the vehicles to the government. The agreement was limited to the two vehicles, stated that it did not alter the rights of the government to any of the other forfeited assets, and reserved the government's right to void the agreement at any time.

Nothing happened in the forfeiture proceedings during Dr. Lamid's appeal. We affirmed his conviction in March 2014. *United States v. Ngari*, 559 F.App'x 259 (5th Cir. 2014). Dr. Lamid passed away that summer. During the pendency of the appeal, Mrs. Lamid had also passed away. Her estate was opened in St. Tammany Parish on July 17, 2014.

No. 15-30572

On October 15, 2014, the government moved to dismiss Mrs. Lamid's claim, arguing that because Rudy lacked authority to assert a claim on behalf of his mother, Mrs. Lamid's claim did not meet the signing requirement of 21 U.S.C. section 853(n)(3). According to the government, the power of attorney Rudy attached to the claim—which was actually executed by Dr. Lamid—did not give Rudy the right to conduct Mrs. Lamid's affairs because Dr. Lamid could not, under Louisiana law, convey to Rudy the right to act on a third party's behalf. The government further argued that Dr. Lamid lacked the mental capacity to execute the power of attorney because he had, on his own motion, been found mentally incompetent to stand trial in a second prosecution just ten days before signing the power of attorney.

Rudy opposed the motion and, for the first time, notified the court that Mrs. Lamid had been interdicted in November 2000, with Dr. Lamid appointed as curator and Rudy as undercurator. Rudy argued that the power of attorney was a valid exercise of Dr. Lamid's role as curator of Mrs. Lamid and that Dr. Lamid's mental incapacity to stand trial had no bearing on whether he was able to execute a power of attorney. He also asked that, in the event the court found that he lacked authority to act on Mrs. Lamid's behalf when he filed the claim, he be allowed to execute an amended claim in his capacity as representative of his mother's estate.

The district court granted the government's motion to dismiss Mrs. Lamid's claim, finding that the original claim was filed without authority and that allowing Rudy to file a new claim would violate the deadline for filing a petition under section 853(n). The district court issued a final order of forfeiture, from which Rudy appeals.

No. 15-30572

**II.**

We review de novo a district court's legal conclusions regarding third-party claims to property subject to a forfeiture order and its factual findings for clear error. *United States v. Sharma*, 509 F. App'x 381, 382 (5th Cir. 2013).

Rudy begins with a due process argument. He contends that the government failed to properly serve Mrs. Lamid with the forfeiture notice and, therefore, any forfeiture of her property interests is invalid.[1] Section 853(n) sets forth the notice requirements for third parties with interests in forfeited property. It provides in relevant part:

> (1) Following the entry of an order of forfeiture under this section, the United States shall publish notice of the order and of its intent to dispose of the property in such manner as the Attorney General may direct. The Government may also, to the extent practicable, provide direct written notice to any person known to have alleged an interest in the property that is the subject of the order of forfeiture as a substitute for published notice as to those persons so notified.

21 U.S.C. § 853(n)(1). We have held that the notice requirements of due process are satisfied when the government's publication of the forfeiture notice is made "by a means 'reasonably calculated to notify potential claimants of the action.'" *United States v. Alvarez*, 710 F.3d 565, 567 (5th Cir. 2013) (quoting FED. R. CIV. P. SUPP. R. G(4)(a)(iv)) (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). The government need not "exert 'heroic

---

[1] To the extent Rudy tries to challenge the forfeiture of Dr. Lamid's property interests, those arguments are rejected. A third party petition filed under section 853(n) "does not involve relitigation of the forfeitability of the property; its only purpose is to determine whether any third party has a legal interest in the forfeited property." FED. R. CRIM. P. 32.2(c) & Advisory Committee's Notes to the 2000 Adoption of Rule 32.2, note on Subdivision (b); *United States v. Holy Land Found. for Relief & Dev.*, 722 F.3d 677, 690 (5th Cir. 2013). Dr. Lamid's interest in the property designated for forfeiture terminated in favor of the government by the forfeiture order included in his criminal sentence. That criminal forfeiture became final as to Dr. Lamid at sentencing. FED. R. CRIM. P. 32.2(b)(4)(A). This court affirmed the judgment against Dr. Lamid on March 5, 2014. *United States v. Ngari*, 559 F. App'x 259 (5th Cir. 2014). It is now final and cannot be revisited.

efforts' or ensure actual notice." *Id.* (quoting *Dusenbery v. United States*, 534 U.S. 161, 170–71 (2002)).

In terms of Mrs. Lamid's notice, not only did the government publish the forfeiture notice on its website in accordance with section 853(n)(1), but it also sent the notice via certified mail to the address where Dr. Lamid's Presentence Report said she resided. Rudy does not dispute that the government mailed that notice; he instead argues that because Mrs. Lamid's November 2000 interdiction was a matter of public record, service by certified mail did not constitute "direct written notice" for purposes of section 853(n). He suggests that, because one of the properties the government sought to forfeit was located in the same parish (Jefferson) where Mrs. Lamid's interdiction proceedings took place, the government could have learned of Mrs. Lamid's interdiction by examining the public records. He claims the record is "replete with evidence of [his parents'] incapacity and interdiction," but fails to offer any record citations supporting this assertion. What the record actually demonstrates is that the issue of Mrs. Lamid's interdiction was not raised until this ancillary forfeiture proceeding was already commenced.

We do not examine the reasonableness of notice under section 853(n) "blindly but instead view[] all the circumstances" in the case. *United States v. Stone*, 304 F. App'x 334, 336 (5th Cir. 2008). Because the government was not aware of Mrs. Lamid's interdiction at the time it sent certified mail to her home notifying her of the forfeiture proceeding, and because the government had no duty to scour public records to discover Mrs. Lamid's interdiction before mailing such notice, we find that notifying Mrs. Lamid of the forfeiture by mailing notice to her home was "reasonably calculated . . . to apprise [Mrs. Lamid] of the pendency of the action and afford [her] an opportunity to present [her] objections." *Mullane*, 339 U.S. at 314. Moreover, Rudy's focus on constructive notice does not make much sense in a case in which actual notice

No. 15-30572

is present because Mrs. Lamid's legal representative—Dr. Lamid—undoubtedly knew about the proceedings as the defendant in the case. And to the extent Rudy is right that he also had juridical authority to act on Mrs. Lamid's behalf, he certainly had notice as he did file a claim on her behalf.

**III.**

The district court found, however, that Rudy lacked authority to assert a claim on his mother's behalf. Section 853(n)(3) requires that a person asserting a legal interest in forfeited property file a petition that is "signed by the petitioner under penalty of perjury." 21 U.S.C. § 853(n)(3). Because of the substantial danger of false claims in forfeiture proceedings, federal courts require strict compliance with this requirement. *See, e.g., United States v. Burge*, 829 F. Supp. 2d 664, 667 (C.D. Ill. 2011) (dismissing petitioner's claim for failure to sign her petition); *United States v. Ginn*, 799 F. Supp.2d 645, 647 (E.D. La. 2010) (noting the desire to discourage false or frivolous claims and stating that "requiring a claimant to sign personally under penalty of perjury serves the government's legitimate interest in protecting forfeited assets"). Mrs. Lamid did not sign her petition; Rudy did. He reasons that, as Mrs. Lamid's curator, Dr. Lamid had a duty to represent her in juridical acts; to exercise reasonable care, prudence, and diligence while acting in her best interest; and to preserve all of her claims and property. Rudy asserts that pursuant to these duties, Dr. Lamid exercised reasonable care in delegating all of his rights to act on Mrs. Lamid's behalf to Rudy through a power of attorney.

To determine whether an individual has capacity to sue or be sued, we look to the state where the court is located, which in this case, is Louisiana. *See* FED. R. CIV. P. 17(b)(3); *Rideau v. Keller Indep. Sch. Dist.*, 819 F.3d 155, 163 (5th Cir. 2016) (citing *Slade v. La. Power & Light Co.*, 418 F.2d 125, 126 (5th Cir. 1969) and 6A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1571, at 679 (3d ed. 2010)) (reaffirming that Rule

17(b) and Rule 17(c), read together, "mandate[] the use of state law in determining a representative's capacity to sue"). Under Louisiana law, a power of attorney, or mandate, "is a contract by which a person, the principal, confers authority on another person, the mandatary, to transact one or more affairs for the principal." LA. CIV. CODE ANN. art. 2989. A power of attorney does not, however, authorize a principal to confer the authority to transact the affairs of a third party. *See* LA. CIV. CODE ANN. arts. 2989–3000.

Dr. Lamid's ability to act on Mrs. Lamid's behalf as her curator does not alter this rule. A curator may not simply delegate his authority to a third party; he must fulfill his duties until the court removes him from office for good cause. *See* LA. CODE CIV. PROC. art. 4568. Although Dr. Lamid's conviction disqualified him to serve as Mrs. Lamid's curator, s*ee* LA. CODE CIV. PROC. art. 4561(B)(2)(a), such disqualification merely served as good cause for his removal. *See* LA. CODE CIV. PROC. art. 4568 (recognizing that the grounds for a curator's removal are not self-executing and removal is only "effective upon qualification of the appointed successor").[2] The conviction did not automatically remove Dr. Lamid from his position as curator, nor did it spontaneously elevate Rudy from the role of undercurator to curator or otherwise expand Rudy's powers such that he was suddenly authorized to file legal claims on Mrs. Lamid's behalf. *See* LA. CODE CIV. PROC. art. 4565(B)–(C); LA. CIV. CODE ANN. art. 393; *Castille v. Gallagher*, 20 So. 2d 175, 178 (La. 1944) (holding that "a direct action, by the ordinary process, is necessary to remove a . . . curator . . . if the . . . curator has forfeited his right to the . . . curatorship after having been legally appointed to and actually invested with the . . . curatorship"). What Rudy did have power to do as undercurator was to move

---

[2] "Qualification" is a term of art referring to the posting of security and taking an oath to act in the interdict's best interests, both of which should be performed within ten days of being named as curator. *See* LA. CODE CIV. PROC. art. 4562.

the court to appoint a successor curator when Dr. Lamid became disqualified. *See* LA. CODE CIV. PROC. art. 4565(B)(6). Had he exercised such diligence in January 2012—when Dr. Lamid was convicted—Rudy, who, as Mrs. Lamid's adult child, would have been next in the statutory order of preference for the appointment of curators, *see* LA. CODE CIV. PROC. art. 4561(C)(1)(c), likely could have been appointed curator well before the government published or mailed notice of forfeiture in April 2012.

But because Rudy did not take these steps, he lacked authority to sue on Mrs. Lamid's behalf, and the district court properly dismissed the claim.

**IV.**

Rudy argues that even if he did lack authority, the district court nonetheless erred in refusing to allow him to amend. Rudy stated at the end of his opposition to the government's motion to dismiss that any defect in the petition could be easily cured by allowing him to file an amended claim in his capacity as representative of Mrs. Lamid's estate. We find that this sufficiently notified the district court of the nature and substance of Rudy's proposed amendment. *See United States ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 386–87 (5th Cir. 2003) (noting that the rules related to motions to amend are liberal and stating that a party need only "set forth with particularity the grounds for the amendment and the relief sought").

In general, we review the denial of a motion for leave to amend a pleading under an abuse-of-discretion standard. *See Flores v. Stephens*, 794 F.3d 494, 504 (5th Cir. 2015); *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014). But when the district court's denial of leave to amend was based solely on futility, we apply a de novo standard of review "identical, in practice to the standard used for reviewing dismissal under Rule 12(b)(6)." *Thomas v. Chevron U.S.A., Inc.*, 2016 WL 4254374, at \*3 (5th Cir. Aug. 11, 2016) (quoting *City of Clinton v. Pilgrim's Pride Corp.*, 632

No. 15-30572

F.3d 148, 152 (5th Cir. 2010)). In agreeing with the government that allowing Rudy to file a new claim would violate the 30 day time period set forth in 21 U.S.C. section 853(n)(2), the district court ruled on futility grounds.[3]

We agree with its holding. Courts have routinely held that the deadline in section 853(n)(2) is mandatory. *See, e.g., Sharma*, 509 F. App'x at 382 (stating that "[a] third party who files an untimely petition loses his right to assert any interest in the property"); *Alvarez*, 710 F.3d at 567–68 (disallowing claim by minor child filed 74 days after service of the preliminary order of forfeiture); *United States v. Marion*, 562 F.3d 1330, 1337 (11th Cir. 2009) (holding that if a third party fails to file a petition within the prescribed thirty days, her interest in the property is "extinguished"); *United States v. Negron-Torres*, 876 F.Supp.2d 1301, 1305 (M.D. Fla. 2012) (finding that *pro se* claimant's petition, which was filed just thirty-seven days after she received notice of the forfeiture, was untimely). Any amended claim would therefore be untimely.[4]

## V.

Rudy's final argument—that the district court erred in allowing the forfeiture of an innocent spouse's property—fails as well. Rudy suggests that property belonging to the community estate cannot serve as substitute

---

[3] 21 U.S.C. section 853(n)(2) provides: "Any person, other than the defendant, asserting a legal interest in property which has been ordered forfeited to the United States pursuant to this section may, within thirty days of the final publication of notice or his receipt of notice under paragraph (1), whichever is earlier, petition the court for a hearing to adjudicate the validity of his alleged interest in the property. The hearing shall be held before the court alone, without a jury."

[4] We note that, notwithstanding the mandatory nature of section 853(n)(2), there is at least one case in which the judgment of forfeiture was vacated and the claimant given another opportunity to file a petition because, in that case, the claimant's failure to timely file was due to "excusable neglect." *See United States v. Estevez*, 845 F.2d 1409, 1412 (7th Cir. 1988) (finding that property owner's failure to timely file his petition for a section 853(n) hearing was "excusable neglect" under Rule 60(b), when the late filing was the result of the government's failure to provide adequate notice). There has been no showing of excusable neglect in the instant case.

property under section 853(p), which, on its face, limits substitute property forfeiture to "other property of the defendant." 21 U.S.C. § 853(p)(2). But in this case, the defendant's property includes community property. There is a process in place to ensure that only his portion of the community property is forfeited—the ancillary proceeding process with which Mrs. Lamid failed to comply. If accepted, Rudy's argument would mean that the ancillary proceeding is wholly unnecessary, and no co-owner would ever need to file a notice of claim because the courts are powerless to order forfeiture of property interest not belonging solely to the criminal defendant.

Moreover, Rudy's argument that the property is not forfeitable "is an impermissible third-party challenge to the forfeiture" of Dr. Lamid's property. *Holy Land Found.*, 722 F.3d at 689. A third party who files a petition under section 853(n) has no right to challenge the legality of the forfeiture ordered by the district court. *Id.* at 690. The "only purpose" of such a petition "is to determine whether any third party has a legal interest in the forfeited property." *Id.* (quoting FED. R. CRIM. P. 32.2, Advisory Committee's Note). As no properly verified third-party claim was filed in this case, we cannot recognize an interest in the forfeited property.

**\* \* \* \***

The district court's judgment is AFFIRMED.

11