REVISED 11/26/2021

# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
November 2, 2021

Lyle W. Cayce
Clerk

No. 21-10031

Paul Scott,

*Plaintiff—Appellant*,

*versus*

U.S. Bank National Association, *doing business as* U.S. Bank,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:20-CV-2380

Before King, Smith, and Haynes, *Circuit Judges*.

Per Curiam:

Paul Scott appeals the judgment of the district court dismissing his civil rights action. For the following reasons, the judgment is affirmed in part, reversed in part, and remanded for further proceedings.

**I.**

Plaintiff-appellant Paul Scott brought this civil rights action against his former employer, defendant-appellee U.S. Bank. Scott alleges that U.S. Bank violated 42 U.S.C. § 1981 by taking retaliatory employment actions against

him because he opposed racial discrimination occurring within his department.

Scott is an African American male. U.S. Bank hired Scott in March 2016 as a Default Management Support Specialist in its underwriting department. Between March 2016 and January 2018, Scott received exclusively positive reviews as well as one merit increase. Scott was also encouraged to apply for management positions by his Human Resources Business Partner, Lakisha Carman.

In January 2018, Scott overheard a manager in his department, Craig Seward, a white male, tell Scott's direct supervisor, Damarris Triggs, an African American male, that he "intended to terminate four (4) African American employees." Scott then warned those employees. One of those employees complained to the human resources department, which led to Carman's requesting that Scott provide a statement about the incident. Scott agreed, but he expressed concern that U.S. Bank may retaliate against him because of the statement. Carman assured Scott that he would not face retaliation.

Despite such assurance, Scott claims that U.S. Bank then started to retaliate. In February 2018, Bennie Wyatt, Triggs's boss, began failing Scott's loans despite those loans' alleged passing under the policy and procedure guide. On February 22, 2018, Scott complained to Triggs that Wyatt was failing his loans in retaliation for Scott's statement. Then, on the following day, Wyatt and Triggs gave Scott a verbal warning about his purportedly poor performance. Throughout March 2018, Scott also experienced issues with his work badge that Triggs did not assist him with.

Around April 30, 2018, Scott called Carman and left a message expressing his belief that these occurrences were in retaliation for his statement. Carman emailed Scott and informed him that "she was no longer

his HR professional," directing him instead to HR Business Partner Molly Werner. Scott met with Werner, but he found that she "was antagonistic and dismissive of Scott's complaints."

In May 2018, Wyatt told Scott that, due to Scott's poor April production numbers, Scott was required to attend a refresher course. At that course, the trainer used Scott's loan documents to teach the class, describing them "as a perfect example of how to write up a loan" and telling Scott that "he did not need a refresher course because he was an expert."

The day after the training, May 24, 2018, Triggs and Wyatt gave Scott a second verbal warning for poor performance based on Scott's April production. Scott responded that he received a 97 percent score for the month of May, the highest of his floor, but Wyatt told Scott that his "peaks and valleys" were unacceptable. Scott said to Triggs, "really man this is harassment." Triggs then "hit the desk with his fist so hard that it could be heard outside of the room," and exclaimed "boy Mr. Paul!" Wyatt then stood up and said, "hold on, don't say no more." Scott said to Wyatt, "this is harassment are you trying to terminate me?" Wyatt replied, "no, but you can give me your resignation, if you want to." Wyatt then suggested that Scott take an "ad hoc vacation day" and that they would "start fresh" the next day. Finally, Wyatt told Scott, "by the way, before you leave you can call HR if you want to. I have her number for you." Scott interpreted this to be a veiled threat regarding his prior complaints.

The next morning, Scott was terminated. Wyatt told Scott that he was "one good underwriter, but we have to terminate you because you are a threat to 20 underwriters." Scott asked what Wyatt meant by that, but Wyatt did not provide an explanation. Scott then reminded Wyatt that on February 13, 2018, a white female coworker had yelled and cursed at Seward and Triggs

No. 21-10031

but was not terminated. He asked why his conduct was more threatening than hers, but Wyatt did not respond.

Scott filed suit against U.S. Bank for unlawful retaliation under 42 U.S.C. § 1981. U.S. Bank moved to dismiss the complaint for failure to state a claim, which the district court granted with prejudice. The court found that Scott could not state a claim for retaliation because he failed to allege that he participated in a protected activity under § 1981. The district court correctly explained that to have participated in a protected activity, Scott must have opposed his employer's unlawful practice. The court then found that Scott's statement to the human resources department and follow-up complaints constituted opposition. But, while Scott's conduct was opposition, the district court concluded it could not qualify as a protected activity because Scott could not demonstrate that he had a reasonable belief that the employer was engaged in unlawful employment practices. Further, the court denied Scott leave to amend his complaint, finding that any amendment would be futile due to "[t]he complete lack of corroborating circumstantial facts regarding Seward's alleged racial discrimination."

Scott appeals both the denial of his request for leave to amend his complaint and the finding that he was not engaged in a protected activity under Title VII.

## II.

We begin by determining whether the district court erred in denying Scott leave to amend his complaint.

## A.

A district court's denial of leave to amend is ordinarily reviewed for abuse of discretion. *City of Clinton v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152 (5th Cir. 2010). That said, when a district court's "denial of leave to amend

4

was based solely on futility, we apply a de novo standard of review identical, in practice, to the standard used for reviewing a dismissal under Rule 12(b)(6)." *Id.* When reviewing a dismissal under Rule 12(b)(6), "[w]e accept all factual allegations in the pleadings as true." *Aldridge v. Miss. Dep't of Corr.*, 990 F.3d 868, 873 (5th Cir. 2021). The plaintiff must plead specific facts that support a facially plausible claim for relief. *Powers v. Northside Indep. Sch. Dist.*, 951 F.3d 298, 305 (5th Cir. 2020).

## B.

A court should freely give leave to amend when justice so requires, Fed. R. Civ. P. 15(a)(2), but a movant must give the court at least some notice of what his or her amendments would be and how those amendments would cure the initial complaint's defects. *Thomas v. Chevron U.S.A., Inc.*, 832 F.3d 586, 590 (5th Cir. 2016). If the plaintiff does not provide a copy of the amended complaint nor explain how the defects could be cured, a district court may deny leave. *McKinney v. Irving Indep. Sch. Dist.*, 309 F.3d 308, 315 (5th Cir. 2002) (affirming denial of leave to amend where plaintiffs "failed to amend their complaint as a matter of right, failed to furnish the district court with a proposed amended complaint, and failed to alert both the court and the defendants to the substance of their proposed amendment").

Here, Scott argued in full: "Plaintiff asserts that his original complaint is sufficient to state a claim and should survive Defendant's 12(b)(6) motion. Should this Court disagree, Plaintiff requests the opportunity to amend his complaint in accordance with the federal and local rules." Scott failed to offer any grounds as to why his leave should be granted or how deficiencies in his complaint could be corrected. Therefore, the district court did not commit error when it denied Scott's request.

No. 21-10031

## III.

We now turn to whether the district court erred in finding Scott failed to state a claim under 42 U.S.C. § 1981 when it concluded that Scott did not engage in a protected activity. It did.

## A.

"We review a district court's ruling on a motion to dismiss de novo, 'accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiffs.' " *Anderson v. Valdez*, 845 F.3d 580, 589 (5th Cir. 2016) (quoting *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008)). "A claim will not be dismissed unless the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief." *Alexander v. Verizon Wireless Servs., L.L.C.*, 875 F.3d 243, 249 (5th Cir. 2017). To prevail against a motion to dismiss, "a plaintiff's complaint 'must contain sufficient factual matter, [if] accepted as true, to "state a claim to relief that is plausible on its face." ' " *Anderson*, 845 F.3d at 589 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## B.

Section 1981 makes it unlawful to discriminate on the basis of race in "mak[ing] and enforc[ing] contracts." 42 U.S.C. § 1981(a). It encompasses "complaint[s] of retaliation against a person who has complained about a violation of another person's contract-related 'right.' " *CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 445 (2008). We examine retaliation claims under Section 1981 using the "same rubric of analysis" as Title VII. *Johnson v. PRIDE Indus., Inc.*, 7 F.4th 392, 399 (5th Cir. 2021) (quoting *Johnson v. Halstead*, 916 F.3d 410, 420 (5th Cir. 2019)).

An employee engages in a protected activity under Section 1981 when "he has opposed any practice made unlawful by [Title VII]." 42 U.S.C. §

6

No. 21-10031

2000e-3(a). In other words, to qualify as a protected activity, the employee's conduct must have "opposed" the employer's practice and that opposed practice must have been unlawful. Here, the district court found that Scott opposed his employer's practice. So, the only issue before this court is whether Scott's complaint plausibly alleged that the practice Scott opposed was unlawful.[1] Importantly, a plaintiff need not demonstrate that the practice was *actually* unlawful for his opposition to be a protected activity; rather, it is enough that the plaintiff *reasonably believed* the practice was unlawful. *EEOC v. Rite Way Serv., Inc.*, 819 F.3d 235, 242 (5th Cir. 2016).

Scott contends that the district court erred by requiring that he satisfy the *McDonnell Douglas* standard at the pleading stage.[2] If the district court applied the appropriate pleading standard, he argues, it would have found Scott adequately alleged facts supporting a reasonable belief that an unlawful practice occurred.

It is true that the Supreme Court has held that the *McDonnell Douglas* standard does not govern at the motion-to-dismiss stage. *Swierkiewicz v.*

---

[1] U.S. Bank argues that we should also consider whether Scott failed to plead the other elements of a retaliation claim, but since the district court did not address these elements, we decline to decide them in the first instance. *Montano v. Texas*, 867 F.3d 540, 546 (5th Cir. 2017) (" 'As a court for review of errors,' we do 'not . . . decide facts or make legal conclusions in the first instance,' but 'review the actions of a trial court for claimed errors.' " (quoting *Browning v. Kramer*, 931 F.2d 340, 345 (5th Cir. 1991))).

[2] *McDonnell Douglas* concerned the order of proof in an employment-discrimination action when the employee submits no direct evidence of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800 (1973). It explained: "The complainant in a Title VII trial must carry the initial burden under the statute of establishing a prima facie case of racial discrimination. This may be done by showing (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications." *Id.* at 802.

*Sorema N.A.*, 534 U.S. 506, 510 (2002) (explaining that *McDonnell Douglas* is "an evidentiary standard, not a pleading requirement"); *see also Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013) ("Inasmuch as the district court required Raj to make a showing of each prong of the prima facie test for disparate treatment at the pleading stage, the district court erred by improperly substituting an 'evidentiary standard' for a 'pleading requirement.' " (quoting *Swierkiewicz*, 534 U.S. at 512)). That said, we have recognized that *McDonnell Douglas* may still be used to frame the motion-to-dismiss inquiry. *E.g.*, *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 767 (5th Cir. 2019) ("[I]t can be 'helpful to reference' [the *McDonnell Douglas*] framework when the court is determining whether a plaintiff has plausibly alleged the ultimate elements of the disparate treatment claim." (quoting *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470 (5th Cir. 2016))). Applying that framework must be done with care, however, as a court errs when it "require[s] a plaintiff to plead something more than the 'ultimate elements' of a claim," *id.* (quoting *Chhim*, 836 F.3d at 470), or "inappropriately heightens the pleading standard by subjecting a plaintiff's allegations to a rigorous factual or evidentiary analysis under the *McDonnell Douglas* framework in response to a motion to dismiss." *Id.*

The district court plainly relied on *McDonnell Douglas*. It concluded that "[a]s there is no direct evidence that Seward acted with racially discriminatory intent, the burden-shifting standard established in [*McDonnell Douglas*] controls." Thus, we must determine whether, when the court found that Scott could not have had a reasonable belief, it merely framed its inquiry with the standard or prematurely engaged in a rigorous factual analysis better reserved for a later stage of the proceedings.

Fortunately, we have much precedent to light the way. When examining whether an employee's belief that his employer engaged in an unlawful act was reasonable, a court must ask whether a person, "not

instructed on Title VII law as a jury would be, [could] reasonably believe that she was providing information about a Title VII violation[.]" *EEOC v. Rite Way Serv., Inc.*, 819 F.3d 235, 242 (5th Cir. 2016) (citation omitted). This inquiry is informed by the nature of the statement forming the base of the alleged discrimination, whether the statement was directed at a particular person or group of persons, whether it came from a person with supervisory authority, and the setting where the employee's complaint was voiced. *Id.* at 243-44.

In *Rite Way*, the employee, Tennort, who was a general cleaner for Rite Way Service, Inc., witnessed a supervisor make two inappropriate comments regarding the appearance of her co-worker. 819 F.3d at 238. Her co-worker complained to a police officer that she was sexually harassed by the supervisor, and she named Tennort as an eyewitness. *Id.* Rite Way began an internal investigation about the incident and asked for Tennort's statement, though the human resources representative "tried to talk her out of reporting what she had seen." *Id.* at 238. Tennort gave a statement in spite of that advice, and over the next five weeks, she received two written warnings and two oral warnings about her job performance before ultimately being terminated. *Id.* at 238-39. The district court granted summary judgment to Rite Way, finding Tennort could not have reasonably believed a Title VII violation occurred, *id.* at 239, and this court reversed. We found that Tennort's belief that an unlawful employment practice occurred could be reasonable because those two statements were directed at a specific employee and were made by someone in a supervisory position. *Id.* at 243-44. This court also highlighted the importance of the fact that Tennort made her statement in response to her employer's investigation. *Id.* at 244. Because the human resources department reached out to Tennort for her statement and indicated her statement could result in consequences for the supervisor, how

her employer handled the incident could have informed her reasonable belief. *Id.*

Similarly, in *Long v. Eastfield College*, this court found that a fact issue regarding reasonable belief precluded summary judgment. 88 F.3d 300, 306 (5th Cir. 1996). There, Long complained "to college officials about a sexually explicit joke told by [another employee] in Long's presence." *Id.* at 305. Thereafter, she was required to provide a report that was never previously required, was "belittled . . . in front of male co-workers," and ultimately had her performance rating downgraded. *Id.* Long made additional complaints claiming these were acts of retaliation. *Id.* We concluded that Long presented sufficient evidence to support a reasonable belief that the employer violated Title VII for the purposes of her retaliation claim. *Id.*

Construing the facts in the light most favorable to Scott, as we must at this stage of the proceedings, he has successfully pleaded facts that could support a reasonable belief. Scott alleged that he overheard a supervisor state that "he intended to terminate four (4) African American employees." A supervisor's considering of the race of an employee when deciding to terminate that employee is an unlawful employment practice. 42 U.S.C. § 2000e-2(m) ("[A]n unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice."); *cf. Payne v. McLemore's Wholesale & Retail Stores,* 654 F.2d 1130, 1139-41 & n.2 (5th Cir. Unit A. Sept. 1981) (noting a reasonable belief of discrimination was established "by virtue of McLemore's failure to hire blacks in or promote blacks to certain employment positions"). In addition, Scott gave his statement reactively. A human resources investigator approached him to give a statement regarding the incident and assured him that he would not face retaliation for his statement.

This situation parallels *Rite Way*, where this court found reasonable belief sufficiently established so as to preclude *summary judgment*. *Rite Way*, 819 F.3d at 245. Like in *Rite Way*, Scott overheard a supervisor make a comment indicative of unlawful behavior; Scott then made his statement in response to an investigator's request and assurance of protection, which may have informed his belief. After giving his statement, he alleges that the company began to retaliate against him by denying his loans, giving him multiple warnings, sending him to unnecessary training, and ultimately terminating him. Considering Scott's statement together with its surrounding context, we find that he has successfully alleged facts that could support a reasonable belief that his employer engaged in unlawful conduct.

The district court acknowledged these facts but discounted them by taking note of other facts that *could*, but do not necessarily, make the initial statement by Seward more innocuous. It explained that Scott's belief could not be reasonable because Seward made the statement to Triggs, who was also African American and thus a member of the same protected class as the employees. This was error. Analyzing facts to this extent at the motion-to-dismiss stage mirrors the rigorous scrutiny that *Cicalese* prohibits. 924 F.3d at 768 (finding a district court erred by determining whether a derogatory statement was merely a "stray remark" at the motion-to-dismiss stage). Moreover, it is not clear that the district court could give much weight to that fact. *See Castaneda v. Partida*, 430 U.S. 482, 499 (1977) ("Because of the many facets of human motivation, it would be unwise to presume as a matter of law that human beings of one definable group will not discriminate against other members of their group."); *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 78 (1998) ("[W]e have rejected any conclusive presumption that an employer will not discriminate against members of his own race.").

The district court also noted that Scott did not allege Seward intended to replace those four employees with members of an unprotected class, as

may be required by *McDonnell Douglas*. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). But since *McDonnell Douglas* cannot be dispositive at this stage—and it is not guaranteed *McDonnell Douglas* will ultimately apply, as discovery may reveal direct evidence—that requirement was premature. *Swierkiewicz*, 534 U.S. at 511-12. Finally, the district court observed that Scott failed to "allege[ a] pattern of disparate hiring, firing, or promotions, [and] points to no additional racially charged remarks." But Scott did not need to allege a pattern or practice, because what he opposed was the alleged discrete unlawful act of race-based termination. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114-15 (2002) (distinguishing between an unlawful employment practice that arises from a discrete unlawful act, such as termination or refusal to hire, and the more continuous conduct required to create a hostile work environment). Simply put, the district court imposed on Scott a heavier burden than he was required to meet at the pleading stage.

In summary, Scott sufficiently alleged facts that, interpreted in the light most favorable to him, supported a reasonable belief that his employer engaged in an unlawful practice. The district court erred when it engaged in a factual analysis akin to *McDonnell Douglas* and discounted these facts.[3]

Therefore, we AFFIRM the judgment of the district court as to the denial of leave to amend the complaint but REVERSE the judgment of the district court granting U.S. Bank's motion to dismiss. We REMAND for further proceedings.

---

[3] Scott also contends that the district court erred by finding that Scott failed to state a claim under the "participation clause" of 42 U.S.C. § 2000e-3(a). Because we find the district court erred when it found Scott failed to state a claim based on opposition grounds, we do not reach this question.