United States Court of Appeals
for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

November 4, 2025

Lyle W. Cayce
Clerk

_____

No. 24-40508
_____

Cynthia Banda, *as Representative of* the Estate of Melissa Banda,

*Plaintiff—Appellant*,

*versus*

City of McAllen, Texas,

*Defendant—Appellee*.

_____

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 7:23-CV-341

_____

Before Smith, Stewart, and Ramirez, *Circuit Judges*.

Per Curiam:[*]

After a tragic incident at the hands of Melissa Banda's ex-husband, Banda's estate ("Banda") brought suit against the City of McAllen, Texas (the "City"), alleging a *Monell*[1] gender-based equal protection claim. The City removed the suit to federal court on the basis of federal question jurisdiction, where the district court ultimately dismissed Banda's complaint

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

[1] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

No. 24-40508

for failure to state a claim and denied her leave to amend. Because the City did not waive its right of removal, and because Banda's fifth amended complaint failed to state a plausible equal protection claim, we AFFIRM.

## I

## A

On November 7, 2019, Melissa Banda filed for divorce from, and a temporary restraining order against, her then-husband Richard Ford, Jr.[2] In the months that followed, Banda made repeated complaints to the McAllen Police Department about physical abuse and stalking by Ford. This included complaints that Ford: was on his way to her home after being served with divorce papers (November 21, 2019); physically assaulted her (February 28, 2020); violated Banda's protective orders (April 18, 2020, and June 30, 2020); watched and stalked her (June 8, 2020, and July 7, 2020); appropriated her name and impersonated her online (July 7 and 20, 2020); repeatedly called her cell phone (July 17, 2020); and took a vehicle from her home (August 5, 2020). As a result of these incidents, Ford was arrested only one time, on February 29, 2020, and was released the following day. On August 6, 2020, Ford kidnapped and murdered Banda. Ford was tried, found guilty of capital murder, and sentenced to life imprisonment without the possibility of parole.

## B

Banda filed suit in the 476th District Court in Hidalgo County, Texas, alleging a wrongful death claim, a survival action, and a claim under the Texas Tort Claims Act ("TTCA"). She later filed a first amended petition, which

---

[2] Because this appeal is presented to the court at the Rule 12(b)(6) stage, we accept all non-conclusory factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

removed the survival action. In response to the first amended petition, the City filed a plea to the jurisdiction, arguing that it retained governmental immunity against Banda's claims. The district court scheduled a hearing regarding the plea to the jurisdiction.

Approximately twenty-nine minutes before the scheduled hearing, Banda filed a second amended petition deleting the TTCA claims, adding back the survival action, and alleging a gender-based equal protection *Monell* claim under 42 U.S.C. § 1983. At the hearing, the City asked the court to rule on the plea to the jurisdiction by holding that it was immune from suit under the TTCA. Banda argued that the plea to the jurisdiction was moot because the first amended petition was no longer operative. Banda acknowledged that because she pleaded a federal claim, the City had thirty days to remove the case to federal court. The court mooted the plea to jurisdiction without prejudice to refiling a plea or removal. In the week that followed, Banda filed third and fourth amended petitions.

## C

On October 5, 2023, the City removed the suit to federal court based on federal question jurisdiction. Under the operative complaint, the only remaining claim was that for municipal liability under § 1983 based on the City's law enforcement policies, practices, and customs regarding domestic assault and abuse. Banda filed a motion to remand, arguing that the City waived its right to removal by participating in the state court hearing and asking that court to rule on its plea to the jurisdiction regarding her first amended petition. The district court denied Banda's motion to remand.

The City filed a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), arguing that Banda's remaining § 1983 claim was barred by the statute of limitations and that Banda alleged insufficient facts to state a claim. Banda opposed the motion to dismiss, arguing that her claims were not

barred, that she pleaded sufficient facts, and alternatively requesting leave to amend if her complaint was found deficient. The court rejected the City's argument regarding the statute of limitations. However, with regard to the City's argument that Banda alleged insufficient facts, the court denied the motion and granted Banda leave to amend her complaint. The court noted that Banda's amended complaint "shall set forth all of the relevant facts that she believes support her *Monell* claim."

Banda subsequently filed a fifth amended complaint and the City filed a second motion to dismiss that complaint. Banda opposed the motion to dismiss, arguing that she pleaded sufficient facts and again alternatively requesting lave to amend if her complaint was found deficient. The court determined that Banda's complaint did not state a claim, denied her alternative request for leave to amend, and entered judgment for the City. Banda timely appealed. This court has jurisdiction under 28 U.S.C. § 1291 because the district court entered a final judgment disposing of all claims.

## II

We first consider whether this suit was properly removed to federal court. In doing so, we review the district court's denial of the motion to remand de novo. *Allen v. Walmart Stores, L.L.C.*, 907 F.3d 170, 182 (5th Cir. 2018).

A case can be removed to federal court based on federal question jurisdiction where it raises a predominating "claim arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. §§ 1441(c), 1331. After removal, a case may be remanded to state court based on (1) lack of subject matter jurisdiction or (2) a defect. 28 U.S.C. § 1447(c). "The removing party bears the burden of showing that federal jurisdiction exists and that removal was proper." *Manguno v. Prudential Prop. & Cas. Ins. Co.*,

276 F.3d 720, 723 (5th Cir. 2002) (citing *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995)).

A defendant can waive their right to removal. However, "[w]aiver, in our circuit, is no casual affair." *Abraham Watkins Nichols Agosto Aziz & Stogner v. Festeryga*, No. 23-20337, 2025 WL 2621301, at *3 (5th Cir. Sept. 11, 2025). As this court recently had the opportunity to explain:

> A defendant's intent to remain in state court must . . . "be clear and unequivocal," and "the right of removal is not lost by action in the state court short of proceeding to an adjudication on the merits." In practical terms, waiver occurs only when a defendant has "invok[ed] the jurisdiction of the state court in resolving the issues presented by the original complaint." Anything less—mere procedural skirmishing—does not suffice.

*Id.* (alteration in original) (footnotes omitted).

Banda argues that the City's statements during the state court hearing on its plea to the jurisdiction are sufficient to constitute a waiver. Banda points out that the City asked the court to rule on its plea to the jurisdiction and hold that the City was immune from Banda's TTCA claims. She characterizes this as "substantial defensive action."[3] Banda suggests that in order to preserve its right to remove to federal court, the City would have had to abandon its plea to the jurisdiction. In so arguing, Banda relies heavily on *Schell v. Food Machinery Corp.*, 87 F.2d 385, 388 (5th Cir. 1937), *cert. denied*, 300 U.S. 679 (1937), and *Brown v. Demco, Inc.*, 792 F.2d 478, 481 (5th Cir. 1986).

―――――――――――――――――――

[3] Banda also argues that the City "urged" the court to "dismiss Banda's federal municipal liability claim with prejudice." However, a plain reading of the transcript makes clear that the City made no such request.

Banda's arguments are unpersuasive. The City's actions and statements were certainly not a "clear and unequivocal" waiver of its right to removal. *See Festeryga*, 2025 WL 2621301, at *3. In participating in the state court hearing, the City asked only that the state court accept its plea to the jurisdiction as to Banda's state court claims—a reasonable request, particularly given that Banda's amended petition was filed less than thirty minute before that hearing. And notably, that plea to the jurisdiction was relevant to Banda's then-nonoperative complaint. During the hearing, the City, the judge, *and* Banda's counsel discussed that given the addition of the federal claim, the suit had become removable to federal court.

The cases on which Banda relies are inapposite. In *Brown*, the defendants "tested state-court waters for four years," during which period "[t]hey filed answers, amended answers, motions of various kinds, third party demands, cross claims, amended cross claims, and participated in discovery and depositions." 792 F.2d at 481–82. In *Schell*, the defendant similarly filed motions to dismiss and to vacate a temporary injunction, participated in a hearing arguing the modification of a temporary injunction, and filed an answer and cross-complaint, among other actions. 87 F.2d at 387–88.

The *Schell* and *Brown* defendants' lengthy, defensive actions are clearly distinguishable from the City's request for a state court finding that it was immune to a claim that had since been removed from Banda's petition. *Cf. Tedford v. Warner-Lambert Co.*, 327 F.3d 423, 428 (5th Cir. 2003) (holding that removal was proper even where the defendant had "mov[ed] to transfer venue . . . [,] mov[ed] for entry of a confidentiality order, . . . mov[ed] to consolidate under Texas Rule of Civil Procedure 11, and . . . fil[ed] special exceptions" in state court). In short, "[a] waiver of the right to remove must be clear and unequivocal; the right to removal is not lost by participating in state court proceedings short of seeking an adjudication on the merits."

No. 24-40508

*Tedford*, 327 F.3d at 428. Accordingly, we hold that the district court did not err in allowing removal of Banda's suit.

## III

## A

We next consider the merits of Banda's claim, first determining whether the district court erred in dismissing her gender-based equal protection claim under 42 U.S.C. § 1983.

A district court's order on a motion to dismiss is reviewed de novo. *McKay v. LaCroix*, 117 F.4th 741, 746 (5th Cir. 2024) (citing *Petrobras Am., Inc. v. Samsung Heavy Indus. Co., Ltd.*, 9 F.4th 247, 253 (5th Cir. 2021)). "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In evaluating a Rule 12(b)(6) motion, a court must accept all non-conclusory factual allegations in the complaint as true, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and draw all inferences in favor of the nonmoving party, *Kelson v. Clark*, 1 F.4th 411, 416 (5th Cir. 2021).

A theory of municipal liability under § 1983 requires "proof of three elements." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). Those three elements are: "a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom."[4] *Id.* at 578 (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). This court has held that "law enforcement policies, practices, and customs toward

---

[4] As explained *infra*, Banda does not plead facts sufficient to show that there was an official policy nor that the policy was the moving force behind her injury. Thus, we do not consider the parties' arguments regarding whether Banda properly identified a policymaker.

domestic assault and abuse cases" can form the basis for a gender-based equal protection claim. *Shipp v. McMahon* (*Shipp*), 234 F.3d 907, 914 (5th Cir. 2000), *overruled in part on other grounds by McClendon v. City of Columbia*, 305 F.3d 314 (5th Cir. 2002) (en banc) (per curiam). In *Shipp*, we explained that to state such a claim

> a plaintiff must show: (1) the existence of a policy, practice, or custom of law enforcement to provide less protection to victims of domestic assault than to victims of other assaults; (2) that discrimination against women was a motivating factor; and (3) that the plaintiff was injured by the policy, custom, or practice.

*Id.*

Banda argues that the district court erred in holding that she failed to plead sufficient facts to establish each of the *Shipp* elements. Banda points to allegations in her complaint that she regularly called the McAllen Police Department over a period of months about Ford's harassment, arguing that those facts constitute a pattern sufficient to satisfy *Shipp*'s first element. Alternatively, she contends that even if those requests for help were insufficient to form a pattern, there was at least one incident (Banda's kidnapping and death) that was so severe to be considered a "policy." Banda argues that she pleaded the second element through her allegations that "[d]iscrimination against women and/or Hispanic women was a motivating factor" for the custom, and that the City provided little protection to women experiencing domestic violence.

As to the first *Shipp* element, it is true that Banda alleged a series of events that are likely sufficient to establish a pattern or practice, that is, reported incidents of domestic violence that did not result in arrest or other action. However, Banda did not provide any facts to establish that victims of domestic violence received "*less protection* . . . than . . . victims of other

assaults." *Shipp*, 234 F.3d at 914 (emphasis added). This is fatal to her claim. As the magistrate judge explained in recommending dismissal, "Banda must show that the police department's policy was to treat victims of domestic assault less favorably than victims of other types of assault. There are no facts alleged by which the court can compare the McAllen Police Department's treatment of domestic assault to its treatment of other assaults." In other words, nowhere in Banda's complaint does she provide facts that make the showing required by *Shipp*'s first element other than her bare assertion that it is so. But we need not accept conclusory statements as true. *Iqbal* instructs that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." 556 U.S. at 678. Thus, Banda fails to satisfy the first element of *Shipp*.

For similar reasons, Banda's pleadings fail to establish the second *Shipp* element. The only fact Banda pleaded to show invidious discrimination was her conclusory assertion that discrimination was the McAllen Police Department's motivating factor for its inaction. But again, conclusory statements are insufficient to meet Banda's burden as to the second *Shipp* element. Banda provides no facts to establish the City's discriminatory intent.[5] *See, e.g.*, *Beltran v. City of El Paso*, 367 F.3d 299, 305 (5th Cir. 2004).

Because Banda failed to state a gender-based equal protection claim under *Monell*, the district court did not err in granting dismissal.

––––––––––––––––––––––––––

[5] Banda argues that the court should compare this case to *Cook v. City of Dallas*, No. 12-CV-3788, 2015 WL 13851115, at *4 (N.D. Tex. Oct. 14, 2015). But that district court case does not provide her with any support. The plaintiffs there pleaded more facts as to both the first and second *Shipp* elements, and the district court ultimately concluded without explanation that the plaintiffs pleaded "just enough fact[s]" to survive the Rule 12(b)(6) stage. *See id.* at *1–2, 4.

**B**

Finally, we consider whether the district court erred in denying Banda leave to amend her complaint before dismissal. "We review denials of leave to amend for abuse of discretion bounded by the Federal Rules of Civil Procedure." *Martinez v. Nueces Cnty.*, 71 F.4th 385, 391 (5th Cir. 2023) (citing *Lowrey v. Tex. A & M Univ. Sys.*, 117 F.3d 242, 245 (5th Cir. 1997)). However, "when a court denies leave to amend for futility of amendment alone, our analysis mimics that of a motion to dismiss." *Id.* (citing *Ariyan, Inc. v. Sewerage & Water Bd. of New Orleans*, 29 F.4th 226, 229 (5th Cir. 2022)).

Generally, a court should "freely give leave to amend when justice so requires." *Scott v. U.S. Bank Nat'l Ass'n*, 16 F.4th 1204, 1209 (5th Cir. 2021), *as revised* (Nov. 26, 2021) (citing Fed. R. Civ. P. 15(a)(2)). But that does not mean that any plaintiff requesting leave is entitled to it. A movant seeking to cure an initial complaint's defects "must give the court at least some notice of what his or her amendments would be and how those amendments would cure the initial complaint's defects." *Id.* (citing *Thomas v. Chevron U.S.A., Inc.*, 832 F.3d 586, 590 (5th Cir. 2016)). "If the plaintiff does not provide a copy of the amended complaint nor explain how the defects could be cured, a district court may deny leave." *Id.* (citing *McKinney v. Irving Indep. Sch. Dist.*, 309 F.3d 308, 315 (5th Cir. 2002)).

Banda argues that the district court erred in denying her leave to amend. She argues that this denial "violat[ed] . . . the rule that a plaintiff be given at least one opportunity to cure a pleading deficiency before dismissing a case." Also according to Banda, the district court did not explain why amendment would be futile.

The court first observes that Banda was in fact offered an opportunity to amend her complaint to plead facts regarding her *Monell* claim. In denying

the City's first motion to dismiss, the magistrate judge granted Banda leave to amend and directed that her amended complaint "set forth all of the relevant facts that she believes support her *Monell* claim" and "address all the deficiencies that [were] identified in the City's motion to dismiss. Banda subsequently filed an amended complaint (her fifth amended complaint). As the magistrate judge pointed out when he recommended dismissal, Banda—unlike most complainants who are granted leave to amend—had the benefit of discovery before she filed her fifth amended complaint. Thus, Banda was offered a direct opportunity to state facts necessary to plead a viable *Monell* claim but was unable to do so successfully.

Banda argues that the magistrate judge's grant of leave to amend after the City's first motion to dismiss was unhelpful because the City "did not point out any pleading deficiencies with respect to" her equal protection claim that she could cure in her amended pleadings. This argument is clearly refuted by the record. In its first motion to dismiss in the district court, the City specifically argued that Banda "simply ma[de] general, unconnected and conclusory statements about unfounded theories regarding disparate treatment of females but provides no justification for the conclusion." And indeed, in Banda's opposition to the City's motion, she explicitly acknowledged and attempted to refute the City's argument that she did not sufficiently plead her *Monell* claim.

But even if the magistrate judge's warning was insufficient (which it was not), Banda still would have been denied leave to amend. Banda argues that she told the district court about the additional facts she would have pleaded if given leave to amend before the dismissal at issue here. Specifically, she notified the court that "new information about [the City's] conduct . . . c[a]me to light" during Ford's murder trial. However, Banda did not provide the district court with any inclination of what facts could have come to light during Ford's murder trial that would have reflected on the

No. 24-40508

City's policies and customs regarding response to domestic violence matters—let alone provide the court with any proposed amended pleading or an explanation of how that pleading would be sufficient to cure the defects raised in the City's motion to dismiss. *Scott*, 16 F.4th at 1209.

Regardless of whether we consider the district court's denial of leave to amend as solely based on futility of amendment (which would trigger a de novo standard of review), a studied analysis reveals that even under that heightened standard of review, the district court did not err in denying Banda leave to amend her complaint.

## IV

For the foregoing reasons, the judgment of the district court is AFFIRMED.