# United States Court of Appeals
## for the Fifth Circuit

No. 25-50671
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

April 16, 2026

Lyle W. Cayce
Clerk

Lisa Sheets,

*Plaintiff—Appellant*,

*versus*

Scott & White Hospital of Marble Falls, *doing business as* Baylor Scott & White Medical Center of Marble Falls, *doing business as* Baylor Scott & White Health,

*Defendant—Appellee*.

_____

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:23-CV-28

_____

Before Smith, Higginson, and Wilson, *Circuit Judges*.

Per Curiam:[*]

Lisa Sheets, a white former registered nurse and charge nurse at Baylor Scott & White Hospital ("Baylor"), challenges the district court's (1) summary judgment and (2) striking of two declarations in a retaliation suit under Title VII and 42 U.S.C. § 1981. Although there is a genuine dispute of

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

1

No. 25-50671

material fact as to whether Sheets engaged in a protected activity, she fails to establish a *prima facie* causal link between her report of racial discrimination and months-later adverse employment action. The district court did not abuse its discretion by sustaining objections to factually duplicative declarations. We affirm.

## I. Factual Background

Sheets alleges that technician Carrie Bauer referred to her colleague Dawn Hartfield as a "N-[word] lover" when Sheets and Bauer were alone in a hospital room sometime in October 2021. Sheets claims that she responded, "You can't say that." Four months later, Sheets first reported the N-word incident. Around the same time, Human Resources ("HR") employee Whitney Wilson met with Bauer and Hartsfield "to discuss their behavior toward each other." After that meeting, HR "continued to monitor Bauer and Hartsfield's behavior."

While at Baylor, Sheets received several complaints for "inadequate communication skills." Her direct supervisor, registered nurse Tava Fogle, issued Sheets a written warning.[1] Even though Sheets claimed that she did not remember, she agreed that she would "try not to intimidate anyone in the future." But in April 2022, colleagues accused Sheets of being "intimidating," "antagonistic," and "controlling." Fogle issued Sheets a final warning.[2]

About three months later, Sheets contacted Baylor's Corporate

---

[1] The warning detailed "a pattern of . . . bullying or intimidating behaviors," "aggression toward[] others that [wa]s perceived as intimidating and controlling," and "hostility and distrust within the department."

[2] This final warning noted that "failure to exhibit immediate or sustained improvement could lead to separation from employment."

Compliance Hotline and reported the same "N-word" incident. Baylor investigated the incident and "partially substantiat[ed]" the poor working relationship between Bauer and Hartsfield. Baylor informed Sheets that the matter had been addressed, and the case was closed.

The complaints about Sheets's behavior continued, namely about her "lack of consistency of communication with the team." Some colleagues noted that "it appeared the pressure of being the charge nurse . . . was making it hard for [Sheets] to succeed in improving [her] communication." Fogle demoted Sheets from charge nurse to an individual nurse contributor role. Within the month, Sheets felt that inadequate disciplinary action had been taken regarding the "N-word" incident and met with Vice President of Patient Care Kelly Mullis to discuss it.

Months later, the complaints about Sheets continued, this time about her "hand-off" procedure which entails the transfer of a patient's care from one nurse to another. Sheets admitted that she would "sit and wait" for someone to initiate the hand-off process instead of taking a more proactive role. Days later, hospital leadership met with Sheets to give her the option to resign or be fired. Sheets chose to resign.

Sheets filed her charge of discrimination with the EEOC, alleging race discrimination and retaliation under Title VII and Chapter 21 of the Texas Labor Code. Sheets filed suit and amended her complaint, alleging claims against Baylor for retaliation under Title VII and 42 U.S.C. § 1981.

A magistrate judge filed an order granting and denying in part Baylor's motions to strike declarations and testimony of several witnesses. Sheets filed objections to the order. The district court granted Baylor's summary judgment motion, overruled Sheets's objections to the magistrate judge's order to strike, and dismissed the case with prejudice. The district court reasoned that though "there is a fact issue for trial on whether [Sheets] engaged

in a protected activity," Sheets "failed to establish a prima facie causal link" between her report of race discrimination and adverse employment action.

## II. Standard of Review

We review a summary judgment *de novo*. *Cambridge Toxicology Grp., Inc. v. Exnicios*, 495 F.3d 169, 175 (5th Cir. 2007). "We interpret all facts and draw all reasonable inferences in favor of the nonmovant." *E.E.O.C. v. Rite Way Serv., Inc.*, 819 F.3d 235, 239 (5th Cir. 2016) (citation omitted). "Summary judgment is appropriate only when the record reveals 'no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (citing Fed. R. Civ. P. 56(a)).

## III. Prima Facie Case

"We consider 'racial discrimination and retaliation claims based on Title VII and 42 U.S.C. § 1981[] under the same rubric of analysis.'" *Johnson v. PRIDE Indus., Inc.*, 7 F.4th 392, 399 (5th Cir. 2021) (citation omitted). A *prima facie* retaliation case

> under either Title VII or § 1981 requires that a plaintiff show that: (1) he engaged in an activity protected by Title VII; (2) he was subjected to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action.

*Id.* at 407–08 (citation and internal quotation omitted). The *McDonnell Douglas* burden-shifting framework applies to Title VII discrimination cases.[3]

---

[3] *See Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 425–26 (5th Cir. 2000) ("Under that framework, the plaintiff must establish a *prima facie* case of discrimination. If the plaintiff succeeds in showing a *prima facie* case, the defendant must then provide some legitimate, non-discriminatory reason for the employee's rejection. Lastly, if the employer gives a legitimate, non-discriminatory reason for the employment action, the plaintiff must then prove, by a preponderance of the evidence, that the proffered reason was [a] mere

No. 25-50671

A. Protected Activity

There is a genuine dispute of material fact as to whether Sheets engaged in a protected activity.

Protected activity includes "oppos[ing] any practice made an unlawful employment practice by this subchapter,'" which encompasses Title VII. *See* 42 U.S.C. § 2000e-3(a).[4]  "To satisfy this opposition requirement, [a plaintiff] need only show that she had a reasonable belief that the employer was engaged in unlawful employment practices." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 348 (5th Cir. 2007) (citation and internal quotation omitted).  Courts assessing an employee's reasonable belief ask "whether a person, 'not instructed on Title VII as a jury would be, [could] reasonably believe that she was providing information about a Title VII violation[.]'"[5]

Sheets reported that Bauer referred to a colleague as a "N-[word] lover," while the two were alone in a hospital room at Baylor, which maintained a policy[6] committing to equal opportunity in the workplace.  Sheets

_____

pretext for discrimination.") (citations omitted).

[4] *Rite Way Serv., Inc.*, 819 F.3d at 239 (referring to 42 U.S.C. § 2000e-3(a) as the "opposition clause").

[5] *See Scott v. U.S. Bank Nat'l Ass'n*, 16 F.4th 1204, 1211 (5th Cir. 2021) (citation omitted); *id.* ("This inquiry is informed by the nature of the statement forming the base of the alleged discrimination, whether the statement was directed at a particular person or group of persons, whether it came from a person with supervisory authority, and the setting where the employee's complaint was voiced.") (citation omitted).

[6] The policy provides "equal opportunity in the workplace for all qualified individuals without regard to race, ethnicity, color, national origin, religion, sex, disability, veteran status, age, genetic information, sexual orientation, gender identity, or any other protected characteristic under applicable law."  The policy also states, "Under no circumstances will an applicant, employee, or worker who in good faith reports alleged incidents of discrimination, or harassment, or who cooperates in an investigation of any such report, be subjected to any form of reprisal or retaliation on account of his/her having made such report or cooperated in such investigation."

presented evidence that she was aware of Baylor's policy and testified that Baylor "has zero tolerance for racism,"[7] even recalling one instance where she had "witnessed a CRNA [(certified registered nurse anesthetist)] get terminated for [using] a gay slur." Although Bauer was not a supervisor and the first complaint was lodged months after the incident, we interpret all facts and draw reasonable inferences in favor of Sheets, who reported racially discriminatory behavior involving the N-word[8] about a colleague at Baylor, which had a good-faith reporting policy. Because a member of the jury could find that Sheets could "reasonably believe that [Sheets] was providing information about a Title VII violation,"[9] there is sufficient evidence to create a genuine dispute of material fact as to whether Sheets engaged in a protected activity.

### B. Adverse Employment Action

Sheets suffered an adverse employment action.[10] She was demoted from charge nurse to an individual nurse contributor role. Later, hospital management told her to resign or be fired. Sheets chose the former, and her employment was terminated.

### C. Causal Link

---

[7] Although the policy does not explicitly reference "zero-tolerance," we consider this testimony in the light most favorable to Sheets, the nonmovant.

[8] *See Ayissi-Etoh v. Fannie Mae*, 712 F.3d 572, 580 (D.C. Cir. 2013) (KAVANAUGH, J., concurring) ("That epithet has been labeled, variously, a term that 'sums up . . . all the bitter years of insult and struggle in America,' 'pure anathema to African-Americans,' and 'probably the most offensive word in English.'") (citations omitted).

[9] *See Scott*, 16 F.4th at 1211.

[10] *Hamilton v. Dallas Cnty.*, 79 F.4th 494, 502–03 (5th Cir. 2023) ("Thus, to plead an adverse employment action, a plaintiff need only allege facts plausibly showing discrimination in hiring, firing, compensation, or in the 'terms, conditions, or privileges' of his or her employment.") (citation omitted).

Sheets fails to prove a causal link between her report of race discrimination and adverse employment action.

To demonstrate the causal link element, a plaintiff must show that the employer's retaliation "was based in part on knowledge of the employee's protected activity." *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 305 (5th Cir. 2020) (quoting *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 684 (5th Cir. 2001)). A plaintiff "must produce *some* evidence of a causal link." *Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 385 (5th Cir. 2003). "Temporal proximity can be an indicator or a proxy for this form of causation, but it is not required or dispositive if there is other evidence of knowledge." *Awe v. Harris Health Sys.*, 163 F.4th 969, 974 (5th Cir. 2026). A subjective belief of retaliation, "without more," is insufficient to survive summary judgment. *Peace v. Harvey*, 207 F. App'x 366, 369 (5th Cir. 2006) (per curiam) (citing *Byers*, 209 F.3d at 427). If a plaintiff brings forth "mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality," then "the temporal proximity must be 'very close.'"[11]

Sheets posits that she does not rely solely on temporal proximity. She

---

[11] *See Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (per curiam) (quoting *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001)); *see also Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 807–09 (5th Cir. 2007) (holding that when a plaintiff only puts forth temporal proximity evidence to show causation, a three and a half month time span between the employer's knowledge of protected activity and adverse employment action was insufficient to show causation); *see also Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997) (holding that the "three-month period of time between [plaintiff's] protected activity and termination was insufficient to establish a causal connection"); *see also Hughes v. Derwinski*, 967 F.2d 1168, 1174–75 (7th Cir. 1992) (holding that a four-month gap between plaintiff's complaint and disciplinary letter "d[id] not sufficiently raise the inference that [plaintiff's] filing was the reason for the adverse action").

alleges that (1) Fogle and Baylor violated the policy by not promptly investigating her initial report, (2) Baylor engaged in an incomplete and flawed investigation, and (3) there are credibility issues about the testimonies of Fogle, Wilson, and Bauer.

There is an eight month period between Sheets's first complaint in February 2022 and her termination in October; this "temporal proximity" is not "very close" and is considerably longer than periods already deemed insufficient to establish causation.[12]  Even if we consider the timing of the first complaint and her demotion several months later, the calculus does not change in Sheets's favor for the same reason.[13]

Even if we construed the relevant temporal period as the time between Sheet's report to the corporate hotline in July 2022 and her demotion in August, she fails to produce sufficient summary judgment evidence to establish causation.  *First*, HR promptly investigated Bauer's and Hartsfield's conduct toward each other in February 2022, the month when Sheets made her first complaint.  Sheets acknowledges that she does not know the steps Fogle took after she made her complaint, nor does she point to summary judgment evidence that Baylor violated company policy in any investigation at that time.  *Second*, Sheets fails to present any evidence demonstrating a flawed investigation, much less one that was incomplete.  *Third*, any purported inconsistencies between the testimonies of Fogle, Wilson, and Bauer relate to whether the racial slur was uttered or reported in the first instance.  Such evidence does not bear on whether there is a causal link between Sheets's protected

---

[12] *See Breeden*, 532 U.S. at 273; *see also Strong*, 482 F.3d 807–08 (holding that a three and a half month span was insufficient); *see also Richmond*, 120 F.3d at 209 (holding that the "three-month period of time . . . was insufficient to establish a causal connection"); *see also Hughes*, 967 F.2d at 1174–75 (holding that a four-month gap was insufficient).

[13] *See id.*

activity and adverse employment action.

Sheets did not prove a causal link between her initial complaint and adverse employment action. Without the essential causation element, Sheets fails to establish a case. The district court correctly granted summary judgment on Sheets's retaliation claim. We have no occasion to apply the remaining *McDonnell Douglas* burden-shifting framework.

## IV. Abuse of Discretion

We "review[] a motion to strike for abuse of discretion." *Cambridge Toxicology Grp., Inc. v. Exnicios*, 495 F.3d 169, 178 (5th Cir. 2007). After reviewing the briefs, record, and applicable law, we find no reversible error. The district court did not abuse its discretion by overruling Sheets's objections to the magistrate judge's ruling on the motion to strike. The stricken declarations are factually duplicative and appear elsewhere in the record.

AFFIRMED.